**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David PUNCH, Defendant-Appellant.**

No. 82–2075.

United States Court of Appeals,
Fifth Circuit.

Dec. 23, 1983.

Samuel E. Stubbs, Laurence S. Kurth, Houston, Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before RUBIN and RANDALL, Circuit Judges, and MITCHELL *, District Judge.

RANDALL, Circuit Judge:

Defendant-Appellant David Punch was convicted of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846[1] and 21 U.S.C. § 841(a)(1).[2] On appeal, Punch contends that his conviction should be reversed because (1) he was

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

1. 21 U.S.C. § 846 (1982) provides:

 Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. Punch was convicted for conspiring to violate 21 U.S.C. § 841 (1982), which provides:

 (a) *Unlawful acts*
 Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;
 . . .

denied effective assistance of counsel in violation of the sixth amendment; (2) the district court erred in admitting evidence of an extrinsic offense; and (3) there was insufficient evidence to support his conviction. Because we hold that Punch was denied his sixth amendment right to counsel, the judgment of the district court is reversed.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

This appeal is a companion to *United States v. Caballero,* 712 F.2d 126 (5th Cir. 1983). In *Caballero,* Punch's codefendants were convicted of possession with intent to distribute marijuana in violation of section 841(a)(1). In affirming these defendants' convictions, Judge Garza recited the facts pertinent to this appeal as follows:

The charges against defendants arose from a Drug Enforcement Administration (DEA) investigation into the suspected narcotics operations of David Punch. That investigation was conducted primarily by one DEA agent, Paul Herring, who posed as an individual involved in the business of importing and storing marihuana. Herring was assisted in his investigation by a number of DEA agents, including Agent Arturo Ramirez, who entered the investigation in late February and was present during the negotiations of the specific transaction for which defendants were indicted.

Agent Herring was introduced to Punch by a DEA informer in October of 1980. Over the course of the next few months, the two had numerous discussions about narcotics operations. For much of the fall, they negotiated the purchase by Herring of ten tons of marihuana. Government seizure in December of the vessel carrying the marihuana eliminated the possibility of that sale. In February, Agent Herring accompanied Punch to Florida for a meeting with his contacts in the smuggling business. This led to renewed negotiations about the importation of a large amount of marihuana. In discussions, Herring had let it be known that he was interested in not only the importation and storage facets of the smuggling operation but also the direct sale aspect of the venture. He told Punch that he had contacts in Denver who could sell the marihuana. Punch again responded to this expressed interest on March 4, 1981, when he mentioned to the agents that he knew someone interested in selling 15,000 pounds of marihuana. The agents expressed interest and generally discussed the idea with Punch for two weeks. These discussions solidified on March 19 when the agents met with Punch at his Galveston home. At that meeting, the agents met Ezell Minton who told them that he had 15,000 pounds of marihuana stored in a warehouse located between Galveston and Houston. The agents told Minton that they were interested in purchasing the drugs but that before they could agree about a price they needed to inspect the marihuana. Minton did produce a two-pound sample, and the agents made an offer to purchase the marihuana, conditioned upon their ability to inspect the product.

The next day, the same parties held another meeting for the purpose of discussing specifics of the sale. Ezell Minton left for a short while during the meeting and returned with defendant Juan Caceres. Later, the agents again insisted on inspecting the marihuana; Caceres explained that this would have to be done in Houston. The five left Punch's home and proceeded to the Candlelight Lounge. Caceres arrived twenty-five minutes after the rest of the group. The ensuing discussion included talk about who would bear the loss in case of government interference with the smuggling operation. Minton and Caceres agreed to bear one-half of the loss, and Herring agreed to absorb the other half.

When Caceres informed the group that his associates had arrived, Herring suggested that Ramirez go to inspect the marihuana. This was consistent with Ramirez' role as one of Herring's assistants.

712 F.2d at 128. Ramirez then left with one of Caceres' associates to inspect the marijuana and, when they returned, Punch and the others were arrested.

Punch and Caceres were both charged with conspiring to possess with intent to distribute marijuana in violation of sections 846 and 841(a)(1), and with possession with intent to distribute marijuana in violation of section 841(a)(1). Their codefendants were charged with the same and all the parties were tried together on November 12–21, 1981.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL.

### A. Akins' Efforts to Withdraw.

Punch alleges ineffective assistance of counsel because his attorney operated under a conflict of interest. Both Punch and Caceres had retained Windi Akins to represent them. At trial Punch intended to present a defense of entrapment, whereas Caceres would deny any involvement in the events leading up to the arrest. On May 19, 1981, nearly six months before trial, Akins moved the court to sever Punch's trial from that of his codefendants because Punch's defense was so "completely antagonistic to the other co-defendants' defenses." Akins also moved the court to hold a *Garcia* hearing[3] so that the court could advise Punch of the dangers of representation by counsel with a conflict of interest, and de-termine if Punch would waive his right to conflict-free counsel. The court failed to respond to either of these motions. In mid-September Akins asked the court to allow her to withdraw as Punch's counsel, but her request was denied. At a pretrial conference on the morning trial began, Akins asked again that a *Garcia* hearing be held. The court replied that such a hearing would be held following the voir dire. During this conference Akins also reasserted that she had a conflict of interest in representing both Punch and Caceres, and asked again that she be allowed to withdraw as counsel for Punch.[4] The court also refused to rule on this motion until after the voir dire.

Trial began later that day. Following the voir dire the court entertained Akins' motion for a *Garcia* hearing. Akins again explained to the court that she faced a conflict of interest because her clients' defenses were irreconcilable. Akins also told the court that Punch intended to testify as to his entrapment, leaving her in the position of either challenging Punch's credibility on behalf of Caceres, or commenting on Caceres' silence. The court's only response was to propose that if and when Punch actually took the stand and incriminated Caceres, Punch could move for a severance. Thus, even though timely and repeatedly informed of a conflict of interest by counsel, the court failed to hold the requested *Garcia* hearing or a hearing prescribed by Federal Rule of Criminal Procedure 44(c).[5]

---

**3.** In *United States v. Garcia*, 517 F.2d 272 (5th Cir.1975), we held that when a defendant's counsel asserts a conflict of interest arising from joint representation:

[T]he district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

517 F.2d at 278.

**4.** Record Vol. III at 3–4.

**5.** Fed.R.Crim.P. 44 provides:

(c) *Joint Representation.* Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

At this point Akins again moved to withdraw as Punch's counsel. The court denied this motion.[6] Finally, in an attempt to provide some form of adequate representation for Punch, Akins asked the court if additional counsel could appear and represent Punch. The court acceded to this request.

Later that day, Akins asked in chambers that Punch and Caceres both testify for the record that they did not waive any conflict of interest. The court allowed Akins to question both defendants and they refused to waive their right to conflict-free counsel. Punch also testified that he was aware that Akins had moved to withdraw as his counsel, and that he had no objections to her withdrawal.[7]

On the next day of trial, James Skelton appeared to represent Punch. Akins, however, remained Punch's attorney of record and was not allowed to withdraw as counsel until Punch was convicted.

Punch contends that he was denied effective assistance of counsel because (1) Akins' conflict of interest denied him adequate representation prior to and during the first day of trial; (2) he did not consent to the association of Skelton as co-counsel; (3) the court failed to conduct a *Garcia* hearing or a Federal Rule of Criminal Procedure 44(c) hearing; and (4) throughout trial Akins was saddled by a conflict of interest, and Skelton was unprepared to provide an adequate defense.

Because we hold that the district court's failure to allow Akins to withdraw as Punch's counsel when she timely asserted a conflict of interest requires a reversal of Punch's conviction, we are not required to address Punch's other allegations of ineffective assistance of counsel.

**6.** Akins' request was as follows:

AKINS: All right. I have another issue that I'd like to bring up, too. I'd like to withdraw as attorney for Mr. Punch. You and I talked about this on prior occasions about withdrawing from Mr. Punch's case. I'd like it on the record that I'm formally asking to withdraw, and I'd also like to have it in the record, which I believe it is this morning, every time that I asserted that you told me you would appoint me on it. I cannot, in good conscience as an attorney, represent both Defendants in this trial, and I'd like to ask to withdraw in this case, and I filed a motion for that.
THE COURT: *The motion is denied.* . . .
Record Vol. III at 33–34.

After opening arguments were heard and trial was recessed for the day, Akins appeared in chambers to have it be made a matter of record that she had approached the court in mid-September *to ask to be allowed to withdraw as* Punch's counsel:

AKINS: I'd like to have in the record that I pointed out to the Judge that I represent the Defendants, Mr. Punch and Mr. Caceres, and I felt that there would be a conflict in that. The Judge, at that point, made no response— had no response to my statement that it appeared that there was a conflict in regards to the defense of Mr. Caceres and Mr. Punch. And my motion to withdraw, I assume, was denied?
THE COURT: Yes.
Record Vol. III at 81–82.

Although the court's post-trial order allowing Akins to withdraw as Punch's attorney stated that this conflict of interest wasn't brought to the court's attention until the morning of trial, the record does not support that conclusion and the government conceded at oral argument that the conflict was raised in advance of trial.

**7.** Akins asked Punch:

Q. I advised you . . . did I not, that there was a conflict of interest that developed between your defense and the defense of Mr. Caceres?
A. Yes.
Q. And further, I asked you if you were willing to waive that conflict of interest and be tried together in this trial?
A. Right.
Q. And what did you tell me?
A. No.

\* \* \* \* \* \*

Q. For the record to be clear, you are not waiving a conflict of interest, are you?
A. No, ma'am.

\* \* \* \* \* \*

Q. Mr. Punch, you know that I have filed a motion to withdraw on your case; is that correct?
A. Yes, ma'am.
Q. And you don't have any objection to that, do you?
A. No, ma'am.
Q. Thank you.
THE COURT: That completes the record. The Court heretofore has heard this matter. The record is amplified by the testimony that you have just heard. The Court adheres to its previous ruling.
Record Vol. III at 38–42.

### B. Conflict of Interest Claims under Holloway v. Arkansas.

■ Joint representation per se does not violate the Constitution. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). But because joint representation of criminal defendants is so fraught with potential conflicts, the trial court must be ever vigilant with regard to any sign of conflict to safeguard the accused's right to effective assistance of counsel. When a trial court ignores or refuses to consider properly a counsel's claim of conflict of interest, considerable danger exists that sixth amendment rights will be violated.

■ In *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), a single public defender represented three defendants at the same trial. The trial judge refused to consider the appointment of separate counsel despite the defense lawyer's timely and repeated assertions that the interests of his clients conflicted. *Id.* at 477–80, 98 S.Ct. at 1175–77. The Supreme Court reversed Holloway's conviction. The Court held that when an attorney requests appointment of separate counsel, based on his representations regarding conflict of interest, the request should be granted. *Id.* at 484–86, 98 S.Ct. at 1178–80. This rule was based upon the following considerations:

> [First,] [a]n "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *State v. Davis,* [110 Ariz. 29, 31, 514 P.2d 1025, 1027 (1973)]. Second, defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem. *Ibid.* Finally, attorneys are officers of the court, and " 'when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.' " *State v.*

*Brazile,* [226 La. 254, 266, 75 So.2d 856, 860–61 (1954)]. (Emphasis deleted.)

435 U.S. at 485–86, 98 S.Ct. at 1179 (footnotes omitted).

In pronouncing this rule the Court did, however, recognize that unscrupulous attorneys might allege a conflict of interest to delay or disrupt the trial: "When an untimely motion for separate counsel is made for dilatory purposes, our holding does not impair the trial court's ability to deal with counsel who resort to such tactics." *Id.* at 486–87, 98 S.Ct. at 1180.[8] "Nor does our holding preclude a trial court from exploring the adequacy of the basis of defense counsel's representations regarding a conflict of interests without improperly requiring disclosure of the confidential communications of the client." *Id.* at 487, 98 S.Ct. at 1180. Thus, in *Holloway,* the trial court's failure to appoint separate counsel without taking "adequate steps to ascertain whether the risk [of a conflict of interest] was too remote to warrant separate counsel," deprived Holloway of the guarantee of assistance of counsel. *Id.* at 484, 98 S.Ct. at 1178.

■ In the present case the district court failed to obey the Supreme Court's mandate by refusing to allow Akins to withdraw as Punch's attorney once she timely asserted a conflict of interest. We do not find that Akins' motion to withdraw was made to delay or disrupt trial as she had tried to withdraw weeks before trial began. Nor do we find that the district court took "adequate steps to ascertain whether the risk [of conflict] was too remote to warrant separate counsel." *Id.* Thus, the district court clearly erred under *Holloway.* Furthermore, we disapprove of the district court's refusal to consider Akins' allegation of conflict of interests until several critical stages of the trial—hearings on pretrial motions, the voir dire of the jury, the reading of the indictment, and the entering of pleas—had transpired.

8. In a footnote the Court added:
 Such risks are undoubtedly present; they are inherent in the adversary system. But courts have abundant power to deal with attorneys who misrepresent facts.
 435 U.S. 486 n. 10, 98 S.Ct. at 1180 n. 10.

After *Holloway* was decided, Federal Rule of Criminal Procedure 44(c) was enacted to "establish[ ] a procedure for avoiding the occurrence of events which might otherwise give rise to a plausible post-conviction claim that because of joint representation the defendants in a criminal case were deprived of their sixth amendment right to the effective assistance of counsel." Advisory Committee Notes, 77 F.R.D. 507, 594 (1978).[9] When two or more defendants are jointly represented by one counsel, rule 44(c) says the district court shall *"promptly* inquire with respect to such joint representation and shall *personally* advise each defendant of his right to the effective assistance of counsel, including separate representation." (Emphasis added.) Furthermore, the court is to take appropriate measures to protect each defendant's right to counsel unless it appears "there is good cause to believe no conflict of interest is likely to arise" as a consequence of the continuation of such joint representation.

■ Rule 44(c) should be followed by the district court even if no conflict of interest is asserted. Here the district court failed to fulfill any of the rule's provisions, even though the specter of conflict was explicitly raised. The Advisory Committee Notes to rule 44(c) carefully state that "it would not suffice to require the court to act only when a conflict of interest [becomes] apparent, for it is not possible to 'anticipate with complete accuracy the course that a criminal trial may take.'" 77 F.R.D. at 599–600 (quoting *Fryar v. United States,* 404 F.2d 1071, 1073 (10th Cir.1968)).[10] Moreover, in *Holloway* the Supreme Court reversed the defendant's conviction because the trial court failed to appoint separate counsel

based on a *possible* conflict of interest brought to the court's attention before the jury was empaneled. In the present case, the district court appeared determined not to take any measures to protect Punch's sixth amendment rights until the conflict had actually reared its ugly head at trial. The court was willing to consider a severance only upon Punch's taking the stand and incriminating Caceres. The court's failure to comply with its rule 44(c) responsibilities caused it to fall into the very conduct *Holloway* proscribes. Thus, Punch's conviction must be reversed: "Whenever a trial court improperly requires joint representation over timely objection reversal is automatic." *Holloway v. Arkansas,* 435 U.S. 475, 488, 98 S.Ct. 1173, 1180, 55 L.Ed.2d 426 (1978). *See also Johnson v. Hopper,* 639 F.2d 236 (5th Cir.) (trial court should have granted defense counsel's initial request for separate counsel when counsel claimed potential conflict), *cert. denied,* 454 U.S. 1010, 102 S.Ct. 548, 70 L.Ed.2d 412 (1981); *Scott v. United States,* 598 F.2d 392, 393 (5th Cir.1979).

## III. EVIDENCE OF EXTRINSIC OFFENSES.

■ On direct examination Agent Herring testified that during his discussions with Punch, Punch told him that one of his boats, the ARTISTA, was seized by the Coast Guard while carrying a load of marijuana. Punch now contends that his admission of this extrinsic offense was inadmissible and prejudicial. We disagree and hold [11] that the testimony was properly admitted under Federal Rule of Evidence

---

**9.** The text of Fed.R.Crim.P. 44(c) can be found at note 5, *supra.*

**10.** The Advisory Committee Notes go on to say:

This is particularly so in light of the fact that if a conflict later arises and a defendant thereafter raises a Sixth Amendment objection, a court must grant relief without indulging "in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). This is because, as the

Supreme Court more recently noted in *Holloway v. Arkansas,* supra, "in a case of joint representation of conflicting interests the evil ... is in what the advocate finds himself compelled to refrain from doing," and this makes it "virtually impossible" to assess the impact of the conflict. 77 F.R.D. at 600.

**11.** Although it is not necessary for us to address this issue in order to decide this appeal, we do so because this issue is likely to recur during Punch's retrial.

404(b).[12] Our test for admission of evidence of extrinsic offenses is set forth in *United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978) (en banc). The two-step test requires, first, that the evidence of an extrinsic offense must be relevant to an issue other than the defendant's bad character, and second, that its probative value must not be substantially outweighed by undue prejudice to the defendant. *Id.* at 911–12.

The first count of the indictment alleged that Punch was involved in a conspiracy that had begun at an unknown time in the past and continued until March 21, 1981, the date of the seizure of the 22,000 pounds of marijuana and the arrest of the defendants. The seizure of the ARTISTA was not introduced to show Punch's bad character, but for the purpose of showing that he was actively involved in the marijuana trade, of which the transaction involving the 22,000 pounds was merely the latest in a long series. This evidence assisted the jury in understanding the conspiracy in which Punch was involved, and its probative value was not outweighed by the possible prejudice the jury might have developed against Punch. *See United States v. Berry,* 644 F.2d 1034, 1038 (5th Cir.1981); *United States v. Dunbar,* 590 F.2d 1340, 1343 (5th Cir.1979).

## IV. SUFFICIENCY OF THE EVIDENCE.

Punch's final argument concerns his entrapment defense. Under the law of entrapment, once the defendant shows some evidence that the government induced him to commit the offense with which he or she is charged, the burden is on the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the offense. *United States v. Garrett,* 716 F.2d 257, 268 (5th Cir.1983); *United States v.*

*Webster,* 649 F.2d 346, 348–49 (5th Cir.1981) (en banc). Punch contends that there was insufficient evidence to prove beyond a reasonable doubt that he was predisposed to commit the crime charged.[13]

It is well-established that the question of entrapment, if fairly raised, is one for the jury. *United States v. Garrett, supra,* at 274; *United States v. Lentz,* 624 F.2d 1280, 1286 (5th Cir.1980), *cert. denied,* 450 U.S. 995, 101 S.Ct. 1696, 68 L.Ed.2d 194 (1981). The standard of review of the sufficiency of the evidence is whether a "reasonable trier of fact could [have found] that the evidence establishe[d] guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1981) (en banc), *aff'd other grounds,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). In evaluating a claim of insufficient evidence according to this standard, we must consider the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Freeman,* 660 F.2d 1030, 1034 (5th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 54, 74, 74 L.Ed.2d 59 (1982), resolving reasonable inferences and credibility choices in support of the jury's verdict. *United States v. Lerma,* 657 F.2d 786, 789 (5th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 463 (1982); *United States v. Henderson,* 588 F.2d 157, 161 (5th Cir.1979). After examining the record, we find that there was sufficient evidence from which a jury could conclude beyond a reasonable doubt that Punch was predisposed to conspire to possess with intent to distribute marijuana.

Where a person already has the readiness and willingness to break the law, the mere fact that government agents pro-

---

12. Fed.R.Evid. 404(b) provides:

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

13. The government does not contest that the fact that Herring initially approached Punch about a possible narcotics transaction was sufficient evidence for Punch to assert an entrapment defense. *See, e.g., United States v. Hammond,* 598 F.2d 1008, 1011 (5th Cir.1979).

vide what appears to be a favorable opportunity is not entrapment. *United States v. Garrett, supra,* at 269; *United States v. Lentz, supra,* at 1287. As in the present case, it is not entrapment for a government agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to engage in an unlawful transaction. *See, e.g., United States v. Rey,* 706 F.2d 145 (5th Cir.1983); *United States v. Hammond,* 598 F.2d 1008 (5th Cir.1979). Law enforcement officials are not precluded from utilizing decoys and undercover agents in order to apprehend persons engaged in criminal activities, provided that they merely afford opportunities or facilities for the commission of the offense by one predisposed or ready to commit it. *Id.*

Such a predisposition on Punch's behalf was evidenced by surreptitiously taped conversations with Herring where Punch bragged that he had engaged in several profitable smuggling operations, and that he could set up lucrative drug deals for Herring. On several occasions Punch mentioned that all of his possessions had been purchased with money earned from narcotics trafficking. Once Herring expressed an interest in purchasing marijuana from Punch, Punch's recorded statements showed that he actively and willingly negotiated several narcotics transactions with Herring, including the one which led to the arrest on March 21, 1981.

 As we stated in *United States v. Garrett, supra:*

> [A] jury may appropriately consider the defendant's conduct and statements subsequent to his initial contact with the government agent, as well as proof of his state of mind before the contact was made, to determine whether the accused should be classified as an "unwary innocent" or an "unwary criminal."

716 F.2d at 274 (quoting *United States v. Dickens,* 524 F.2d 441, 445 (5th Cir.1975),

*cert. denied,* 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976)). After examining the evidence adduced at trial, we find that the jury could find beyond a reasonable doubt that Punch was a willing, knowing and voluntary participant in an illegal scheme, even though the scheme was conceived and in part implemented by law enforcement agents. *See United States v. Garrett, supra,* at 274; *United States v. Lentz, supra,* at 1287.[14]

## V. CONCLUSION.

In *Holloway v. Arkansas* the Supreme Court repeated what it said more than thirty-five years before in *United States v. Glasser,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942):

> Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. . . . The trial court should protect the right of an accused to have the assistance of counsel. . . .
>
> \* \* \* \* \* \*
>
> "Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from . . . *insisting, or indeed, even suggesting, that [defense] counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court.*

(quoting *United States v. Glasser,* 315 U.S. at 71 & 76, 62 S.Ct. at 465 & 467); *see Holloway,* 435 U.S. at 484–85, 98 S.Ct. at 1178–79 (emphasis in original).

Because we hold that the district court failed to fulfill its duty in this regard, we reverse and remand the case for a new trial.

**REVERSED and REMANDED.**

---

**14.** Punch also claims that there was insufficient evidence to support the verdict. We disagree. Punch in fact admitted the acts giving rise to the offense in asserting his entrapment defense. Furthermore, the other overwhelming evidence introduced at trial shows that this claim is without merit.