Stephen JAMES, Appellant,

v.

The STATE of Texas, Appellee.

Stanley JAMES, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–82–00149–CR, 01–82–00150–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 30, 1984.

Walter Boyd, Phillip Ross, Houston, for appellant.

James C. Brough, Houston, for appellee.

Before DUGGAN, LEVY and DOYLE, JJ.

## OPINION

DOYLE, Justice.

A jury convicted appellants of aggravated robbery, and the trial court assessed punishment for each appellant at 10 years confinement. Stephen James brings six grounds of error on appeal, and his brother Stanley James brings eight grounds. Both appellants claim as their first ground of error ineffective assistance of counsel. The appellants were tried together, and both were represented by the same two attorneys. Each appellant will hereafter be referred to by his first name, for the sake of brevity.

We abated these appeals for an evidentiary hearing limited to the issue of whether appellants' trial attorneys warned them of the risks inherent in joint representation, noting that the potential for a conflict of interest was apparent. Following a hearing, the trial court entered the following findings of fact and conclusions of law:

FACT 1: Both defendants had court-appointed as well as retained counsel, eventually Mr. William F. Miller and Mr. Jim Kelly being their retained counsel.

FACT 2: The Court inquired through Mr. Jim Kelly as to whether there was a conflict of interest between representing both defendants. He informed me there was no conflict that existed at the time of trial.

FACT 3: Mr. Kelly informed his clients concerning the conflict of interest and their right to be tried together or separately and the defendants made the decision of being tried jointly. The defendants were tried jointly. Their defenses were not inconsistent. Each defendant maintained that he did not commit the offense. Each defendant had and presented alibi witnesses.

FACT 4: As part of the trial strategy the defense attorney concluded their best interest would be to be tried together and that it would be advantageous to have each other as testimony presented and cut down the possibility of conflicts in their testimony.

The Court reached the conclusion that the defendants were ably represented by competent counsel who explained to them their rights of being tried together or separately and reached an intelligent decision as to this matter and it is

the conclusion of this Court that there was no conflict of interest involved in this matter.

■ This court is not bound by the findings, conclusions or recommendations of the convicting court, and we are free to accept or reject a conclusion regarding the effectiveness of a defendant's counsel. *Ex parte McCormick,* 645 S.W.2d 801 (Tex. Crim.App.1983). In order to support a claim of ineffective assistance, a defendant who raised no objection to his counsel at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Ex parte Parham,* 611 S.W.2d 103 (Tex.Crim.App.1981). Once he has carried this burden, he need not show any specific harm to obtain relief. *Id.* Appellants allege that actual conflicts of interest arose in the representation of both brothers.

The complainant testified that she was attacked by two men as she sat in her car in the parking lot of the Red Dog Saloon. One man opened the driver's door, held a gun on the complainant, threatened her, hit her on the head with the gun, and bit her arm several times. The other man got into the passenger seat and held her head down. During the robbery, the complainant's car rolled backwards and hit a parked car across the street from the bar. The man in the passenger seat got out of the car, and when he did, the complainant escaped. She dropped her purse as she got out of the car, and the man in the passenger seat picked it up. The complainant ran into the bar, and when the police came, she gave them a description of the two men. Stanley was arrested two blocks away at a fast food restaurant and was brought to the back door of the bar shortly thereafter, where the complainant identified him as the man without the gun who took her purse. Several months later, the complainant was in the courtroom for an early setting on Stanley's trial, and she pointed out Stephen as the man with the gun who bit her.

*A customer* of the Red Dog Saloon testified that he parked his car down the street and was walking toward the bar on the day in question when he noticed the complainant's car, which had backed into a parked car across the street from the bar. He saw two men struggling inside the complainant's car, and heard the complainant screaming for help. He ran to his car to get a club, and when he returned, the men were gone, and the complainant was going into the bar. He positively identified Stephen several months later in the courtroom at the early setting in Stanley's trial, and he testified at trial that he believed Stanley was the other man he saw attacking the complainant.

The defendants presented several alibi witnesses. Their mother testified that she visited Stephen at his home in Philadelphia three days before the robbery and had not seen him in Houston until the early trial setting in Stanley's case. At the time of the robbery, she was with Stanley at his apartment two blocks from the Red Dog Saloon and said he had just come from work and was going across the street to the fast food restaurant for dinner.

Stanley's fiancee testified that she, too, was at Stanley's apartment when he came home from work that day, and she left almost immediately to make a phone call at a booth across Cullen Avenue from the Red Dog Saloon. She saw Stanley as she returned a few minutes later in front of the fast food restaurant on her way back to the apartment.

Stanley's employer testified that he saw Stanley leave work that afternoon around the time of the robbery. Stanley worked for American Vending Company, which is located across Dennis Street from the Red Dog Saloon. Stephen had previously worked for American Vending before moving to Philadelphia several months earlier.

A co-worker testified that she left work that afternoon, got into her car, and drove down Dennis Street toward Cullen. Two men were crossing Dennis Street going toward the bar, and she had to apply her brakes to avoid hitting one of them. At the end of Dennis Street, she stopped at a stop sign and heard a crash behind her. When she looked in her rear-view mirror,

she saw that the complainant's car had backed into a parked car across Dennis Street from the bar. She made a U-turn to return to American Vendors for some letters she had forgotten, and as she drove around by the complainant's car, she saw the two men she had seen before struggling inside the complainant's car. She parked in front of American Vending and, as she walked to the office, she looked back at the complainant's car. She saw the two men get out of the complainant's car and run toward her, then turn into an alley between American Vending and the building next door. She testified that she knew Stanley and Stephen from working with both of them, and that the men she saw were not the James brothers.

A friend of Stephen's uncle who lives in Philadelphia testified that she had called Stephen at his sister-in-law's house on the day in question. Stephen was not at his sister-in-law's house, so she left a message. Stephen called her back late that afternoon and they talked for about 15 minutes. On cross-examination, she said she could not tell if the call came from within Philadelphia or was long-distance.

Stephen subleased his apartment in Philadelphia from another witness. She testified that she saw Stephen in front of his apartment on the day of the robbery or the next day. They discussed the overdue rent on Stephen's apartment.

Stephen testified that he was at home in Philadelphia on the day of the robbery, and was at his sister-in-law's house at the time of the robbery. He was not asked about any prior offenses, but another witness was asked if she had heard that Stephen had been arrested three times for auto theft. No objection was made to the question, and nothing further was offered by the state on the subject.

Stanley testified that he got off work that afternoon and walked home, where his mother and fiancee were staying. He changed his shoes and talked to his mother for a few minutes, and then went across the street to the fast food restaurant. He was arrested there a few minutes later and

taken to the Red Dog, where the complainant identified him as the robber who had taken her purse.

One of the attorneys who represented the James brothers testified at the hearing on possible conflicts of interest. He stated that he had informed his two clients,

there is always a possibility of a conflict where you try two defendants jointly, one attorney or two attorneys are representing them at the same time in the Court. I also explained to them that what advantage they might have, they asked me what advantage and we discussed what advantage they would have if they were tried together. I stated to them at that time the only advantage that I could see was that they would be in the courtroom throughout the trial and overhear all the testimony and cut down the possibility of conflicts in their testimony if they should testify in behalf of each other. I also pointed out to them that they, if one of them was found guilty I felt that the other one would probably be found guilty by the jury and they would more or less sink or swim together. I pointed out also the possibility of one being found innocent that might even help or be to the benefit of the other. After going over that, the judge of the court, the Honorable Jon Hughes called me into his office and I discussed this as I recall it was in his office and I explained to him what I told the defendants. I should add also that one of the defendants questioned me about would I try two cases for the same price or what would be the price for trying the two cases. I told him I could not try two cases for the same amount of money and that should not be a factor if they wanted a separate trial. I told them that should not be a factor that the court if they could not afford a second trial or two trials the court would appoint an attorney to represent the other party. They deliberated about this and made known to me and told me they wanted to try the case together. There is always a potential conflict in any case like this

where you try two defendants and it wasn't something new.

The attorney testified that he recognized the potential for a conflict from the beginning of preparation for the trial, but he felt that no actual conflict of interest ever arose. He based this opinion on the lack of any testimony by either defendant's alibi witnesses that damaged the other defendant. The attorney said he had not read the transcription of the trial testimony and was relying entirely on his memory of the case. He did not specifically recall whether one defendant had allegedly carried a gun or used more force than the other, or whether some witnesses had confused the two defendants. He did not maintain a file on the case, as he was called to assist his less-experienced colleague in trying the case, and his colleague had maintained the file. His colleague did not testify.

Stephen and Stanley both testified that no one had mentioned the possibility of a conflict before or during trial. Stanley testified that the attorneys representing him advised his brother that "it would be better as far as trying to get an acquittal" if they represented both brothers in one trial, because Stephen's alibi would help Stanley as well.

Possibly the trial lawyers' strategy of "sink or swim together" was the best defense available to the James brothers, if the welfare of both was equally important to counsel, but it is precisely this dilemma—the welfare of both versus the welfare of each—that spawned the conflict of interest in this case. Assuming that the two brothers, if represented by separate counsel, would each have been primarily interested in his *own* welfare, the conflicts become apparent.

Stanley was living and working in the neighborhood where the offense occurred, and was arrested and identified near the scene moments after the police were called. Stephen, on the other hand, was living in Philadelphia when the offense occurred, and was not arrested and identified until several months later when he came to Houston for Stanley's trial. Stephen's separate counsel could have used these facts to argue that Stanley was more likely than Stephen to be one of the attackers because Stanley was in close proximity to the crime, and that Stanley's identification was more trustworthy than Stephen's identification because it occurred soon after the crime. Stanley's separate counsel could have used these same facts to argue that he had an innocent explanation for being in the neighborhood on the day in question, but that Stephen's unexplained presence in the neighborhood on the day in question was highly suspicious.

Stanley's alibi was given by his mother and his fiancee. Stephen's alibi was given by a neighbor and a potential employer who lived in Philadelphia. Stephen's separate counsel could have used these facts to argue that Stanley's alibi was weaker than Stephen's alibi because Stanley's was given by close family members.

Stephen was identified as the attacker who first opened the complainant's car door, who hit her on the head with the gun, bit her arm, and ordered her to move over so he could get in the car. Stanley was identified as the other robber who never spoke or harmed the complainant, but sat in the passenger seat of the car and later took her purse. Stanley's separate counsel could have used these facts to argue that Stephen's identification was more trustworthy than Stanley's, because the attacker with the gun occupied the complainant's attention during the robbery. Also, at the punishment phase of the trial, Stanley's separate counsel could have argued that these facts showed that Stanley was merely accompanying Stephen, and that Stanley should be treated more leniently than Stephen because he did not carry a gun or injure the complainant.

There is some indication in the record that Stephen had previously been convicted for an extraneous offense. Stanley's separate counsel could have argued that his previously clean record made it less likely that he had been involved in the robbery because, unlike his brother, he had done nothing criminal in the past. Also, at the

punishment phase of the trial, Stanley's separate counsel could have argued that he should be treated more leniently than Stephen because of Stephen's prior criminal record.

In *Ex parte Parham,* 611 S.W.2d 103 (Tex.Crim.App.1981), the trial attorney for two brothers later testified that an actual conflict arose during their trial, because he could have called one brother to the stand to exculpate the other by proving that only one was involved in the murder. The trial court found that no harm had resulted. The Court of Criminal Appeals reversed the trial court's ruling, holding that the attorney's "divided loyalties" resulted in ineffective assistance of counsel.

In *Gonzales v. State,* 605 S.W.2d 278 (Tex.Crim.App.1980), the trial attorney for three co-defendants called one to the stand in an attempt to rebut the state's version of the events, and his testimony inculpated the other two defendants. The trial court found that the attorney had not adequately warned the defendants of possible conflicts, but also found that no harm had resulted. The Court of Criminal Appeals overruled the trial court, holding that the attempt "to serve no less than *three* masters" resulted in ineffective assistance of counsel.

The state in the case at bar argues that the conflicts complained of are simply matters of trial strategy, not to be second-guessed by the appellate courts. However, the Fifth Circuit has held that actual conflicts of interest exist:

> whenever one defendant stands to gain significantly by counsel adducing probative evidence or *advancing plausible arguments* that are damaging to the cause of a co-defendant whom counsel is also representing. (emphasis added).

*Foxworth v. Wainwright,* 516 F.2d 1072, 1076 (5th Cir.1975).

■ The potential arguments asserted by appellants' counsel on appeal represent an actual conflict of interest which arose in the representation of the James brothers, and their representation was ineffective because of this conflict. Appellants' first grounds of error are sustained.

The judgment of the trial court is reversed, and the case is remanded for a new trial.

DUGGAN, J., dissents.

DUGGAN, Justice, dissenting.

I respectfully dissent, and would hold that no actual conflict of interest arose which denied either appellant effective assistance of counsel.

The majority states that "potential arguments asserted by appellants' counsel on appeal represent an actual conflict of interest which arose...." This speculation about possible separate and mutually recriminatory defenses for two brothers proceeds entirely upon a series of assumptions. The majority opinion tacitly assumes that each of the James brothers would have allowed his separate counsel to present arguments harmful to his brother's defense. This is not logical, nor is it good trial strategy. Neither the evidentiary hearing ordered by this court, nor any other source contained in the record, indicates that either appellant believed his brother to be guilty. The kind of finger-pointing suggested by the majority opinion for each brother to direct against the other would surely have eroded the jury's ability to believe that either brother was blameless.

Contrary to the hindsight criticism of defense counsel's trial strategy, the defense theory at trial, i.e., separate and independent alibis for the two appellants, was reasonable and logical. Faced with eyewitness identification of each appellant by the same two state's witnesses, each brother could reasonably have expected to benefit substantially from the united front presented to the jury through the numerous alibi witnesses. To convict either of them, the jury was virtually required to disbelieve twice as many defense witnesses as they would have faced in the trial of a single

defendant. No alibi witness's testimony for either appellant was inconsistent with that of any other defense witness. Each appellant's alibi was plausible, consistent, and devoid of implication or inference that the co-defendant may have been guilty. Added to the separate alibi testimony of each appellant was the testimony of Stanley James' co-worker, who knew both James brothers, witnessed the crime, saw the offenders, and testified that neither James brother was one of the perpetrators.

Joint representation per se does not violate the sixth amendment right to counsel, *United States v. Punch*, 722 F.2d 146 (5th Cir.1983), and a bare assertion of conflict of interest does not support a claim of ineffective assistance of counsel. *Ex parte Acosta*, 672 S.W.2d 470 (Tex.Crim.App. 1984). To establish a sixth amendment violation, a defendant who raised no objection at trial must show that an *actual* conflict of interest affected his attorney's performance, and a speculative claim of conflict is insufficient to warrant relief. *Ex parte Parham*, 611 S.W.2d 103 (Tex.Crim.App. 1981); *United States v. Lyons*, 703 F.2d 815, 820 (5th Cir.1983). In *Lyons*, a husband and wife were represented by the same attorney at their trial for conspiracy and interstate transportation of stolen goods. The wife claimed that, had she been represented by separate counsel, her lawyer could have argued that she was the innocent dupe of her husband's criminal activity. The Fifth Circuit panel held that this speculative claim did not constitute an actual conflict of interest.

In the case at bar, the claim of a conflict is no less speculative than that urged in *Lyons*, since it requires second-guessing trial strategy and assumes that each brother either thought the other was guilty, or was willing to have his attorney suggest that the other was.

*Because I* believe that no actual conflict arose, I would overrule appellants' first grounds of error, and hold that their representation was not ineffective.