770 F.2d 167
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
SHEILA FREDERICK, DEFENDANT-APPELLANT.
 NO. 83-1121
 United States Court of Appeals, Sixth Circuit.
 7/3/85
 
 E.D.Mich.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: CONTIE and WELLFORD, Circuit Judges; and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Sheila Frederick appeals her conviction for willful misapplication of CETA funds pursuant to 18 U.S.C. Sec. 665(a) contending that she was deprived of effective assistance of counsel due to her counsel's alleged conflict of interest and that the evidence was insufficient to sustain a conviction. We affirm.
 
 I.
 
 2
 On August 12, 1982, defendant-appellant Sheila Frederick, a planner for Communities United For Action (CUFA), was indicted along with CUFA executive director Jean Conyers, fiscal officer Henrietta Luckie, and bookkeeper Isaac E. Lewis, and charged with willful misapplication of CETA funds, 18 U.S.C. Sec. 665(a), conspiracy to willfully misapply such funds, 18 U.S.C. Sec. 371, and use of a false social security number, 42 U.S.C. Sec. 408(g). CUFA was a subcontractor for Wayne County in distributing funds pursuant to the Comprehensive Employment Training Act of 1973. On August 25, 1982, Frederick and the other defendants, all represented by Attorney Elliott Hall, pleaded not guilty. On October 18, 1982, defendant Luckie retained separate counsel. In early November, Luckie's counsel, seeking increased preparation time, asserted that Luckie was required to retain him due to a conflict of interest in Hall's representation of the four defendants. Luckie argued that a plea agreement was offered involving a restitution-diversion program for two defendants, allegedly Luckie and Frederick. Luckie alleged that due to the conflict, Hall did not notify the defendants of the offered plea. The court and counsel agreed, however, that since the prosecution had proceeded past the state at which a plea agreement was possible, the alleged conflict had no relevance to the case.
 
 
 3
 On November 8, the defendants waived a jury trial and on November 10 trial began. On November 16, the trial court dismissed the social security number counts. Testimony at trial revealed that until October 12, 1979 Frederick had received a paycheck every two weeks. At that time, however, Frederick, and the other defendants, began receiving weekly checks with one of the checks coming from a CUFA home weatherization fund and one from a work experience program fund comprised of CETA funds. Frederick's salary rose from $593.25 every two weeks to $960 every two weeks, more than a sixty percent increase in pay. Frederick testified that she drafted the contract between the CUFA and Wayne County. She testified that Conyers had given her a raise in October 1979 and that she believed that Conyers as executive director had authority to give her a raise. Frederick testified that she was present at a meeting between Conyers and William McGill, CUFA Board Chairman, in which McGill told Conyers that if she could find money for raises then to give them across the board. Frederick further testified that she did have access to payroll reports in January 1980 because she was working on a project to lower CUFA fringe costs so that insurance could be lower. Frederick noticed when she began receiving additional checks that her name was indicated as 'S. H. Frederick' and that her social security number was incorrect. When she asked bookkeeper Lewis about this he told her that 'ADP would not kick out the checks unless there was some alterations in the ID numbers and the name.'
 
 
 4
 The code number '140' was printed on the extra checks Frederick received. This number represented the CETA work experience program fund. Frederick testified that she did not notice this number and did not know that her raise cam from the CETA funds. However, Frederick testified that she was aware Conyers had modified the CUFA/Wayne County contract in December 1979 to decrease administrative costs and increase service costs.
 
 
 5
 Conyers testified that Frederick did a salary analysis to aid her in administering the raises. McGill testified that the Board did not approve the raises, and that he had told Conyers to try to find money for raises then to seek Board approval.
 
 
 6
 On November 19, 1982, the district court found all defendants guilty of misapplication pursuant to 18 U.S.C. Sec. 665(a) and Lewis, Conyers, and Luckie guilty of conspiracy. The court found that the CUFA board had not authorized the raises and stated that 'I reject the testimony of Mrs. Conyers and Mrs. Frederick as not credible on this issue.'
 
 
 7
 With reference to Mrs. Frederick, although I did find her not guilty of conspiracy, I think there is sufficient evidence to establish her guilt as to Count Four, which charges her with misapplication of CETA funds under 18 U.S.C. 665(a).
 
 
 8
 Mrs. Sheila Frederick prepared the contract for Wayne County. She knew that the CETA funds could not be allocated for administration. She was present when Mr. McGill told them about the raises. She knew that the huge raise she got was not authorized. She received checks with altered names on them. She received four withholding slips. She received two checks and she received checks that were written on Department 140 and also checks that had false social security numbers. I think there is no question but what she willfully obtained the money by fraud, so I will find Mrs. Frederick guilty of Count Four.
 
 
 9
 On December 23, 1982, Frederick was sentenced to two years probation with restitution of $1,440 in the first twenty-two months.
 
 
 10
 On January 6, 1983, judgment was entered and on January 31, 1983 notice of appeal was filed. On June 17, 1983, this court dismissed the appeal for lack of jurisdiction as a consequence of appellant's late notice of appeal. On September 20, 1983, the district court entered an order granting an extension of time to file notice of appeal, but no notice was filed. In April 1984, the government petitioned for an order to show cause why probation should not be revoked. On April 16, 1984, the district court found continuing excusable neglect and allowed an extension of time to file notice of appeal and such notice was filed.
 
 
 11
 In this court, Frederick moved to remand her case for an evidentiary hearing and to hold the appeal in abeyance pending such hearing. In an affidavit attached to such motion Frederick swore that her trial counsel had not discussed the ramifications of multiple representation with her, that counsel provided a special group rate for representing all defendants, and that counsel never informed Frederick of the plea offer. The motion for remand was denied on November 15, 1984.
 
 II.
 
 12
 Due process requires the government to prove, beyond a reasonable doubt, every element of the offense charged. In re Winship, 397 U.S. 358 (1970); Stacy v. Love, 679 F.2d 1209, 1212 (6th Cir.), cert. denied, 459 U.S. 1009 (1982). In reviewing a verdict challenged as based on insufficient evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. McCullah, 745 F.2d 350, 354 (6th Cir. 1984); United States v. Stull, 743 F.2d 439, 442 (6th Cir. 1984); United States v. Tilton, 714 F.2d 642, 645 (6th Cir. 1983); Stacy v. Love, 679 F.2d 1209, 1212-13. 'The Due Process Clause, in other words, sets a lower limit on an appellate court's definition of evidentiary sufficiency.' Tibbs v. Florida, 457 U.S. 31, 45 (1982) (footnote omitted). Sufficiency of the evidence must be considered in regard to each element of appellant's offense. Fuller v. Anderson, 662 F.2d 420, 423 (6th Cir. 1981), cert. denied, 455 U.S. 1028 (1982). However, '[t]he standard is not whether the evidence is sufficient to convince the . . . court of the petitioner's guilt beyond a reasonable doubt. Nor does the standard required the prosecution to rule out every hypothesis except that of guilt beyond a reasonable doubt.' Scott v. Perini, 662 F.2d 428 431-32 (6th Cir. 1981), cert. denied, 456 U.S. 909 (1982) (footnote omitted). 'This review should be independent of the jury's [court's] determination that evidence on another count was insufficient.' United States v. Powell, 105 S. Ct. 471, 478 (1984).
 
 18 U.S.C. Sec. 665(a) provides:
 
 13
 Whoever, being an officer, director, agent, or employee of, or connected in any capacity with any agency or organization receiving financial assistance of any funds under the Comprehensive Employment and Training Act or the Job Training Partnership Act knowingly enrolls an ineligible participant, embezzles, unwillfully misapplies, steals, or obtains by fraud any of the moneys, funds, assets, or property which are the subject of a financial assistance agreement or contract pursuant to such Act shall be fined not more than $10,000 or imprisoned for not more than 2 years, or both; but if the amount so embezzled, misapplied, stolen, or obtained by fraud does not exceed $100, such person shall be find not more than $1,000 or imprisoned not more than 1 year, or both.
 
 
 14
 To obtain a conviction under Sec. 665 the government must prove two elements:
 
 
 15
 (1) that the accused was an officer, director, agent or employee of, or connected in any capacity with an agency receiving financial assistance under CETA;
 
 
 16
 (2) that the accused embezzled, willfully misapplied, stole, or obtained by fraud 'moneys, funds, assets, or property which are the subject of a grant or contract of assistance.'
 
 
 17
 United States v. Coleman, 590 F.2d 228, 230 (7th Cir. 1978), cert. denied, 440 U.S. 980 (1979); United States v. Brown, 742 F.2d 363, 365 (7th Cir. 1984). However, the intent or mens rea required by the statute does not include knowledge that the funds willfully misapplied were CETA funds. United States v. Hamilton, 726 F.2d 317, 320 (7th Cir. 1984). 'We believe that Congress . . . did not intent to limit this protection to situations where the defendant was aware of a federal interest in the funds.' Id. at 320. Accordingly, a willful misapplication of funds which the accused is not aware are CETA funds is actionable under the statute.
 
 
 18
 Appellant's attack on the sufficiency of the evidence apparently centers on the fact that the government did not establish that appellant knew the money she was receiving was from CETA funds. However, since the government was not required to prove that Frederick knew the source of the funds, this argument is irrelevant.
 
 
 19
 The testimony of Conyers, McGill and Frederick which placed Frederick at the meeting regarding the raises, her role in aiding Conyers in implementing the raises, and her access to payroll records, establish that Frederick knew the raises she received were unauthorized. Accordingly, there is sufficient evidence to support Frederick's conviction.
 
 III.
 
 20
 With respect to the joint representation of the four defendants, Frederick asserts that the district judge's failure to inquire into the possibility of conflict inherent in such representation violated both Fed. R. Crim. Pro. 44(c) and the Sixth Amendment to the U.S. Constitution. We find merit in neither argument.
 
 A.
 Fed. R. Crim. Pro 44(c) provides:
 
 21
 Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.
 
 
 22
 The Advisory Committee Note to the Rule provides in pertinent part:
 
 
 23
 The failure in a particular case to conduct a rule 44(c) inquiry would not, standing alone, necessitate the reversal of a conviction of a jointly represented defendant.
 
 
 24
 While case law indicates that the requirements of Rule 44(c) should be followed sua sponte by the district court, Government of Virgin Islands v. Zepp, 748 F.2d 125, 139 (3d Cir. 1984); United States v. Punch, 722 F.2d 146, 152 (5th Cir. 1983), it is clear that mere failure to comply with the rule does not constitute reversible error, United States v. Carr, 740 F.2d 339, 348 (5th Cir. 1984); United States v. Ard, 731 F.2d 718, 726 (11th Cir. 1984); United States v. Carter, 721 F.2d 1514, 1536 (11th Cir.), cert. denied, 105 S. Ct. 89 (1984); United States v. Bradshaw, 719 F.2d 907, 915 (7th Cir. 1983); United States v. Mers, 701 F.2d 1321, 1326 (11th Cir.), cert. denied, 104 S. Ct. 481-82 (1983); United States v. Alvarez, 696 F.2d 1307, 1309 (11th Cir.), cert. denied, 461 U.S. 907 (1983); United States v. Arias, 678 F.2d 1202, 1205 (4th Cir.), cert. denied, 459 U.S. 910 (1982); United States v. Benavidez, 664 F.2d 1255, 1258 (5th Cir.), cert. denied, 457 U.S. 1121, 1135 (1982). The slight record before us makes it difficult to determine whether the district judge complied with Rule 44(c) throughout the proceedings. As we note below, the court sufficiently addressed defendant Luckie's objections and any technical noncompliance, short of constitutional infirmity, does not require reversal.
 
 B.
 
 25
 The conflict issue as presented to the district court is presented at appendix pages 29-35. The issue arose when defendant Luckie moved for substitution of counsel on the ground that attorney Hall could not represent all defendants because different plea agreements had been offered to the defendants and Hall had not informed them of such. Luckie's new attorney indicated:
 
 
 26
 What I am actually indicating to the Court is where plea negotiations are entered into and you have four Defendants that you are representing but two of those Defendants are offered a plea to a charge and the other two are not, I don't know how at that point in time an attorney can, without a conflict of interest, represent all those four Defendants and advise each of those Defendants.
 
 The district court responded:
 
 27
 I will say to you quite frankly going in, the law is very clear, if you represent a conflict is there, I think the Holloway case and all the rest indicate that I have got to stop. Are you saying there is a conflict on anything except a possible plea?
 
 
 28
 Counsel essentially responded in the negative, Luckie was allowed to substitute counsel and the trial continued. Neither Frederick, Lewis or Conyers asserted that there was a conflict of interest in the multiple representation.
 
 
 29
 In Cuyler v. Sullivan, 446 U.S. 335, 348 (1980), the Court established that '[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.' (footnote omitted). Smith v. Anderson, 689 F.2d 59, 64-65 (6th Cir. 1982).
 
 
 30
 Actual conflict of interest is evidenced if, during the course of the representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action. . . . This confict must cause some lapse in representation contrary to the defendant's interest but such lapse need not rise to the level of actual prejudice.
 
 
 31
 Sullivan v. Cuyler, 723 F.2d 1077, 1086 (3d Cir. 1983). '[T]he conflict must be real, not some attenuated hypothesis having little consequence to the adequacy of representation.' Brien v. United States, 695 F.2d 10, 15 (1st Cir. 1982).
 
 
 32
 We find no evidence of actual conflict or adverse effect in this case. The district court correctly concluded that since the time for plea bargaining had expired any controversy surrounding the plea negotiations was of little consequence to the adequacy of counsel's representation. In light of defendant's failure to object, we find no actual conflict requiring further proceedings in this case.
 
 
 33
 According, the judgment of the district court is AFFIRMED.
 
 
 34
 CONTIE, Circuit Judge, concurring in part and dissenting in part.
 
 
 35
 In concur in Parts I, II and III-A of the majority opinion. For two reasons I cannot concur in Part III-B of the court's opinion. First, it is clear from the record that the district reasonably should have known that the possibility of a conflict existed in the joint representation. Second, the facts as alleged are sufficient to establish an actual conflict of interest adversely affecting counsel's performance in violation of the Sixth Amendment right to effective assistance of counsel. Accordingly, I would remand the case to the district court to hold an evidentiary hearing to examine the facts alleged in support of Frederick's claim.
 
 I.
 
 36
 In Holloway v. Arkansas, 435 U.S. 475, 488-89 (1978), the Court held that 'whenever a trial court improperly requires joint representation over timely objection reversal is automatic.' Mers, 701 F.2d at 1327; United States ex rel. Ballard v. Bengston, 702 F.2d 656, 662 (7th Cir. 1983); United States v. Alvarez, 580 F.2d 1251, 1259 (5th Cir. 1978). It is clear that in this case defendant Frederick raised no objection to the joint representation.[1] However, in Cuyler v. Sullivan, 446 U.S. 335, 347 (1980), the Court explained that even where a defendant fails to object to joint representation, the trial court has a duty to inquire if 'the trial court knows or reasonably should know that a particular conflict exists.' The Court has emphasized the duty of both trial and appellate courts to conduct such an inquiry even if not raised by the parties. In Wood v. Georgia, 450 U.S. 261 (1981), the Court raised the conflict question sua sponte. 'Where, as here, a possible due process violation is apparent on the particular facts of a case, we are empowered to consider the due process issue.' Id. at 264-65 (footnote omitted). The Court commanded that 'Sullivan mandates a reversal when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists." Id. at 272 n.18. The Court vacated the revocation of petitioner's probation and remanded for a determination of whether an actual conflict existed.
 
 
 37
 In this case, the district court was faced with an allegation that counsel for four codefendants charged with identical counts had conducted plea bargaining, had been offered a deal which differentiated among the defendants, and had failed to communicate the proposed bargain to the defendants. Our inquiry is whether the district court, given these allegations, knew or should have known that a particular conflict existed. These allegations allow several possible inferences. First, that because the plea agreement differentiated among the defendants, there were legitimate distinctions among the defendants with respect to their degree of culpability. Second, that counsel, fa ed with this plea agreement which differentiated among the defendants, chose not to disclose the agreement because he sought equal bargains for each defendant, in effect sacrificing the interests of one codefendant for another. These allegations, drawn to the attention of the district court, establish that the district court should have known that a conflict existed among the interests of the defendants. However, the district court made no attempt to inquire into the truth of the allegations or to personally advise defendants of their right to conflict-free counsel. Accordingly, under the authority of Wood v. Georgia, the case should be remanded to the district court to inquire into defendant's allegations of conflict of interest.
 
 II.
 
 38
 The majority apparently would hold that even if Frederick's allegations are true, she would not be entitled to relief from the judgment of conviction because the facts alleged do not rise to the level of an actual conflict adversely affecting counsel's performance. I disagree.
 
 
 39
 In Cuyler, the Court held that '[i]n order to establish a violation of the Sixth Amendment, a defendant . . . must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.' 446 U.S. at 348.[2] The Court further found that 'unconstitutional multiple representation is never harmless error,' id. at 349, and that 'a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief,' id. at 349-50.[3] This rule of presumed prejudice was affirmed in Strickland v. Washington, 104 S. Ct. 2052, 2067 (1984).
 
 
 40
 Cuyler v. Sullivan requires a two-part inquiry into (1) actual conflict and (2) adverse effect of that conflict on counsel's representation. See Sullivan v. Cuyler, 723 F.2d 1077, 1084 (3d Cir. 1983). Once this showing is made, prejudice is presumed. Strickland, 104 S. Ct. at 2067 ('Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affect his lawyer's performance.").
 
 
 41
 This case presents a clear case of conflict. 'Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing.' Holloway, 435 U.S. at 489-90. '[T]he evil . . . is in what the advocate finds himself compelled to refrain from doing.' Id. at 490. An attorney's failure to relate a plea agreement differentiating among codefendants clearly suggests a conflict of interest. Bradshaw, 719 F.2d at 917. Faced with a plea agreement which offers different deals to defendants charged with identical crimes, counsel is faced with the choice of counseling some defendants to accept the agreement and others to refuse. However, the fact that a unified defense strategy may be appropriate at trial does not justify an attorney's insistence on the same bargain for all defendants. At this point the attorney is sacrificing the interests of the defendants with the better bargain for those of the other defendants. Further, Hall's alleged failure to advise Frederick of the alleged bargain is the precise evil against which Sullivan, Holloway, and Wood provide protection.
 
 
 42
 Further, a showing of adverse effect is not the same as actual prejudice. United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir.), cert. denied, 451 U.S. 938 (1980). While an inquiry into prejudice would involve a comparison of the government's case against defendant with and without the effect of the alleged conflict, a measure of adverse effect requires comparison of counsel's actual representation with the representation expected from conflict-free counsel. Adverse effect is apparent in this case in light of counsel's failure to communicate the terms of the agreement to defendants. If not for the differing bargains and the resultant conflict of interest, counsel likely would have informed defendants of the bargains.
 
 
 43
 I reach these conclusions based on facts as alleged by the defendant. Frederick moved this court to remand the case for an evidentiary hearing prior to appeal. Having determined that the facts as alleged constitute a constitutional violation, I would remand the case to the district court for an evidentiary hearing to determine the facts surrounding the plea negotiations.
 
 
 
 [1]
 Of course, it is unlikely for counsel to object to his own representative capacity. Requiring counsel to object requires a decision by counsel implicating the defendant's right to conflict free counsel and counsel's own pecuniary interest in the case
 
 
 [2]
 United States v. Newman, 733 F.2d 1395, 1401 (10th Cir. 1984); Brien v. United States, 695 F.2d 10, 14 (1st Cir. 1982); Mers, 701 F.2d at 1328
 
 
 [3]
 Holloway, 435 U.S. at 489; Bradshaw, 719 F.2d at 915; Alvarez, 696 F.2d at 1310; Mers, 701 F.2d at 1327; United States v. Dressel, 742 F.2d 1256, 1259-60 (10th Cir. 1984); Brown v. United States, 665 F.2d 271, 272 (9th Cir. 1982); Benavidez, 664 F.2d at 1259; United States v. Risi, 603 F.2d 1193, 1195 (5th Cir. 1979); United States v. DeCoster, 624 F.2d 196, 202 (D.C. Cir. 1976)