**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Pedro Luis SANTISTEBAN and
Argemiro Parra–Monsalve,
Defendants–Appellants.**

No. 86–1799.

United States Court of Appeals,
Fifth Circuit.

Nov. 18, 1987.

Luis E. Rojas, Hialeah, Fla., for Santisteban.

Joseph Montemayor, Dallas, Tex., (court appointed), for Parra–Monsalve.

Terence J. Hart, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for U.S.

Before BROWN, POLITZ, and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This appeal arose out of the convictions of Pedro Santisteban and Argemiro Parra–Monsalve (Parra) on drug conspiracy charges. We are asked to determine whether the district court erred in permitting a paid government informant to testify for the prosecution and whether the introduction of such testimony violated the due process rights of the defendants. We must also decide whether the district court abused its discretion, under F.R.Crim.P. 14, in denying Santisteban's separate motion for severance and his motion for a new trial. Finding no error, we affirm.

### The "Coke" Float

Santisteban and Parra were charged with conspiring to possess with intent to distribute and distributing cocaine, using a telephone to facilitate the commission of the conspiracy, and with traveling in interstate commerce to promote and facilitate the commission of the conspiracy to distribute cocaine. They were found guilty on all counts.

The majority of the evidence presented by the prosecution was in the form of testimony by a paid informant, Antonio Sanchez. Sanchez was a regular DEA informant. At the time of this trial, his only source of income was informant fees. Sanchez received $3,700 for working as an informant in this case. His fee was not contingent upon the successful prosecution of the case. Sanchez was paid for his assistance in making the case and for his testimony at trial. Sanchez had previously been charged in Florida state court with involuntary manslaughter and entered a guilty plea. He was sentenced to ten (10) years probation. The probation hearing was held in July 1986, approximately three weeks after the arrest of Santisteban and Parra. A special condition of Sanchez' probation was that his probationary period be monitored by the DEA. While Sanchez worked for the DEA, he was only required to make one (1) report per year.

Although Sanchez lived in Dallas, he made frequent trips to Miami where he first met Pedro Santisteban. Sanchez had worked with DEA Special Agent Shedd, who was based in Dallas, prior to getting involved in this case. After Santisteban agreed to front Sanchez' drugs and arranged with Parra for Sanchez to receive a kilo of cocaine in Miami to be sold by Sanchez in Dallas, Sanchez delivered the cocaine to the DEA in Miami. Upon returning to Dallas, Sanchez and Shedd worked out a plan to introduce Shedd to Santisteban as Sanchez' partner. This was done and over the next few months several recorded phone calls were placed by Shedd and Sanchez from the DEA offices in Dallas to Santisteban in Miami. During these conversations, numerous references were made in drug jargon to the kilo of cocaine which had been delivered to Sanchez and the method by which Santisteban would be paid.

Parra and Santisteban flew to Dallas in July 1986, ostensibly to check on a car which Santisteban had sold to a woman in Dallas but which was not working properly. During a meeting with Sanchez and Shedd in a Dallas restaurant, Santisteban revealed that the purpose of this trip was to pick up the money for the "merchandise." Santisteban was angry that Sanchez had not paid for the cocaine he had received and that Sanchez had not gone to Miami to work things out instead of attempting to conduct drug business over the telephone. Santisteban became agitated and threatened Sanchez and his wife. Anticipating this development, Shedd and Sanchez had prepared a story that the DEA had seized the money. At the request of Agent Shedd, the DEA had prepared a fake receipt which was shown to Santisteban and apparently served to appease him. Shedd indicated that at least some of the money could be obtained the next day and would immediately be turned over to Santisteban. Santisteban wanted the funds to be hand carried to Miami and Parra demonstrated how he had previously transported money through airport security by wearing it around his waist.

Santisteban made several references to a Colombian boss who was "dangerous," "ruthless" and an "unreasonable savage." Future cocaine transactions were discussed with an agreement that Sanchez would pay for future cocaine in advance. Shedd discussed financing deals through banks, as well as money laundering, to avoid the problems associated with transporting large amounts of cash. Santisteban refused to risk going through a bank to finance such "small" deals, because such transactions were scrutinized by the IRS and the Banking Commission. Santisteban indicated that Parra brought a lot of cocaine into the United States and that he had introduced Parra and Sanchez so that both could make money. After everyone got up from the table, Shedd gave a signal and Santisteban and Parra were arrested.

### Money for Nothin?

█ The major issue raised here is whether the arrangement by which the DEA compensated Sanchez for information was a contingency fee contract and hence a denial of due process. The defendants rely directly on *Williamson v. United States*, 311 F.2d 441 (5th Cir.1962), which established a virtually per se rule that convictions obtained by testimony of informants paid under contingency fee contracts could not stand.

The exact nature of the compensation arrangement with Sanchez need no longer detain us after the recent en banc decision of *United States v. Cervantes–Pacheco*, 826 F.2d 310 (5th Cir.1987) (en banc). "[T]he credibility of the compensated witness, like that of the witness promised a reduced sentence, is properly [for an] instructed jury to determine. Accordingly, we overrule *Williamson* and its per se exclusionary rule." *Cervantes*, at 316.

The defendants can no longer contend that their convictions were tainted solely because of the testimony of a paid informant. The nature of the compensation arrangement was fully disclosed at trial on both direct and cross examination. The jury was properly instructed to take into account the payment to Sanchez and its

effect on the testimony provided. Under these circumstances, the district court did not err in permitting this testimony. There was no due process violation.

*Was there really "coke" in the float?*

 Santisteban and Parra also raise the question of whether there was sufficient evidence to establish a conspiracy to possess with intent to distribute and distribution of cocaine. The essence of a conspiracy under 21 U.S.C. § 846 is the unlawful agreement itself. *United States v. Vergara*, 687 F.2d 57, 160 (5th Cir.1982). To support a conviction, the government was required to prove that the conspiracy existed, and that Santisteban and Parra were aware of the existence of the agreement and intended to join and participate in furtherance of the conspiracy. *United States v. Glasgow*, 658 F.2d 1036, 1040 (5th Cir.1981).

There is no doubt that there was sufficient evidence to support a conspiracy conviction. In this case most of the evidence was the result of unrecorded conversations among Sanchez, Agent Shedd, Santisteban and Parra. The recorded telephone conversations were significant in that they were riddled with drug dealer jargon, especially since Santisteban cautiously refused to discuss any drug business over the telephone.[1] The remainder of the evidence consisted of testimony given by Sanchez and Shedd which conflicted with testimony given by Santisteban and Parra. As evidenced by the convictions on all counts, the jury obviously believed the government witnesses, Sanchez and Shedd.

The relevant standard for appellate review of sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560

(1979). Under this standard, the evidence must be viewed in the light most favorable to the government. Inferences and credibility choices should be resolved in support of the verdict. *United States v. Punch*, 722 F.2d 146 (5th Cir.1983).

The testimony of Sanchez and Agent Shedd provided ample support for the verdict. The function of the jury is to evaluate the credibility of witnesses. Unless the testimony of a witness is so implausible on its face that it would tend to "defie credible laws," credibility determinations are to be made by the jury. The district court did not err in accepting the jury's verdict.

*A Second Scoop?*

 Santisteban sought a new trial based on newly discovered evidence in the form of an affidavit executed by Parra absolving Santisteban of any involvement in the cocaine distribution. The motion was overruled after Parra withdrew the affidavit in open court. Once the affidavit was withdrawn, there was no evidence, newly discovered or otherwise, to support Santisteban's motion for a new trial. There was no abuse of discretion.

Santisteban also filed a motion to sever under Rule 14, because testimony given during the trial resulted in antagonistic defenses. Santisteban's supposedly antagonistic defense was that he was an innocent victim of Parra's drug conspiracy. The district court denied the motion, concluding that Santisteban had shown neither "specific and compelling prejudice," nor that the defenses raised were, in fact, antagonistic.

The decision whether to grant a motion to sever under Rule 14 rests within the sound discretion of the trial court. A defendant who is seeking severance bears a heavy burden; he must demonstrate "specific and compelling prejudice" against which the trial court was unable to afford protection. *United States v. Grapp*, 653

---

1. Shedd testified at trial that during the meeting in Dallas Santisteban explained that he did not want to talk on the phone about drugs because he thought his phone lines were tapped. During a recorded telephone conversation which took place on June 21, 1986, Santisteban also told Sanchez, "look, don't read me anything." Sanchez later testified that drug deals are not discussed openly over the telephone.

F.2d 189, 193 (5th Cir.1981).[2] Santisteban has not shown any such prejudice, nor has he adequately shown that the defenses raised were antagonistic. The testimony of the defendants was essentially the same, the only difference being that Parra testified that both he and Santisteban were involved while Santisteban claimed to know nothing of any drug transaction and that Parra was the sole participant. The motion to sever was properly denied.

### Conclusion

Following the recent en banc decision of the Fifth Circuit in *Cervantes*, it is no longer a per se violation of due process to present testimony of a paid informant. The jury was properly instructed to take into account the payment made and its effect on the testimony provided. The due process rights of these defendants were not violated. Decisions on motions to sever and motions to grant a new trial rest within the sound discretion of the trial court. This discretion was not abused.

AFFIRMED.

---

**2.** *See also United States v. Howell,* 664 F.2d 101 (5th Cir.1981).