**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Carlo PALELLA, Defendant–Appellant.**

No. 87–2247.

United States Court of Appeals,
Fifth Circuit.

May 25, 1988.

H. Michael Sokolow, Asst. Federal Public Defender, Roland E. Dahlin, III, Federal Public Defender, Houston, Tex., for Palella.

James R. Gough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., Andrew Levchuk, Mervyn Hamburg, Atty.,

Appellate Section, Crim. Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Before RUBIN and POLITZ, Circuit Judges, and LEE,[*] District Judge.

POLITZ, Circuit Judge:

Convicted of both conspiracy and substantive counts for trafficking in heroin, Carlo Palella appeals, challenging the jurisdiction of the court, an evidentiary ruling, the sufficiency of the evidence, and his sentences. Finding no reversible error we affirm the convictions; however, for the reasons assigned we vacate the sentences and remand for resentencing.

## Background

A native of Milan, Italy, Palella moved to Brownsville, Texas in 1982 in what he described as an effort to jettison heroin addiction and make a fresh start. He purchased a tract of land and a mobile home and opened an Italian restaurant in Brownsville. After the restaurant failed he relied on the revenues of a small trailer park which he had established on his property.

Sometime in May 1985 the Drug Enforcement Administration undertook an investigation of Palella and his two brothers, Giovanni and Roberto, who remained in Italy. An undercover agent drew Palella into discussions about a possible drug importation scheme. While acknowledging his prior involvement in the European heroin traffic and the maintenance of contacts with persons still active therein, Palella evinced no interest in any heroin deal with the DEA agent. Subsequently, DEA agents placed Palella under surveillance.

A neighbor, Donald Uzzel, who had served as an unpaid deputy sheriff for ten years, "made" the surveillance and approached the agents. Thereafter, Uzzel revealed his suspicions that Palella was involved in the drug trade and the agents solicited his assistance. Uzzel worked as a paid informant for the next 18 months, during which time he gained Palella's confidence and met Palella's brothers on their visits to Brownsville. In October 1986, after an earlier aborted effort, Uzzel set up a heroin deal between Carlo and his brothers and a DEA agent acting as Uzzel's principal. Uzzel initially suggested delivery of the heroin in the United States but Palella demurred and insisted that increased costs and risks attendant upon delivery in the United States mandated delivery of possession of the heroin in Milan. Uzzel agreed to this scenario.

Arrangements for the transaction were completed and on November 6, 1986 Giovanni Palella delivered 977 grams of heroin to an undercover DEA agent in a hotel in Milan, Italy. The DEA agent field-tested the sample, which tested positive for heroin. On signal, Italian police arrested Giovanni Palella and took possession of the cache of heroin. After being tested and weighed, the heroin was secured in a sealed evidence bag and, in accordance with standard practices, was placed in the care of the Office of Evidence of the Italian Tribunal in the Palace of Justice in Milan.

On the same morning, and before Palella became aware of the arrest of his brother, Uzzel arranged for Palella to meet with a DEA agent posing as an associate of Uzzel's principal. The associate was seeking information about the impending Milan transaction. Carlo demonstrated detailed knowledge about the transaction and assured Uzzel and the agent that the deal was set and would be successfully concluded. Carlo was fully cognizant of the fact that the heroin was to be brought into the United States for distribution and he expressed the hope that this would be the first of many similar deals.

A number of telephone conversations between Uzzel and the Palellas were recorded. The recordings and transcriptions were offered in evidence. At trial Palella testified, advancing his exculpatory explanations for the otherwise inculpatory evidence.

[*] District Judge of the Southern District of Mississippi, sitting by designation.

The jury found Palella guilty of conspiracy to import heroin; conspiracy to possess heroin with intent to distribute; possession of heroin with intent to distribute; and distribution of heroin intending or knowing that it would be imported into the United States. On each of the counts Palella was sentenced to the custody of the Attorney General for 20 years and to 10 years' supervised release. The sentences were ordered to run concurrently.

Palella appeals, challenging the subject-matter jurisdiction of the district court, the admissibility of the heroin in light of a claimed break in the chain of custody, the sufficiency of the evidence, the constitutionality of simultaneous convictions for possession of heroin with intent to distribute and distribution intending or knowing of its importation, and the propriety of the sentencing order. We find validity only in the challenge to the sentences.

## Analysis

### A. Subject-matter jurisdiction

■ Palella maintains that the district court lacked jurisdiction because at most the evidence reflects that he assisted in the distribution of heroin in Italy. He claims that there was no evidence of illegal activity within the United States or implicating it. We do not agree.

Palella was fully aware that Uzzel's principal intended to transport the heroin for distribution in the United States. The interests of the United States are manifest. The statutes under which Palella was convicted are part of a comprehensive scheme designed to suppress and, hopefully, ultimately terminate the illegal distribution of drugs from whatever source, foreign or domestic. As we have previously observed, "The power to control efforts to introduce illicit drugs into the United States from the high seas and foreign nations is a necessary incident to Congress' efforts to eradicate all illegal drug trafficking." *United States v. Baker,* 609 F.2d 134, 137 (5th Cir.1980).

The bulk of the negotiations and arrangements for this illegal activity took place in Texas. Numerous acts in furtherance of the conspiracy occurred in Texas. That the delivery took place in Milan is not controlling. Palella was aware that the buyer intended to introduce the heroin into the United States. He knew that the delivery in Milan was merely a mesne step. His contributions were significant and facilitated that ultimate goal. *United States v. Perez–Herrera,* 610 F.2d 289 (5th Cir.1980). Palella's activities provide a sufficient basis for the exercise of federal jurisdiction. *United States v. Michelena–Orovio,* 719 F.2d 738 (5th Cir.1983), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984); *Chua Han Mow v. United States,* 730 F.2d 1308 (9th Cir.1984), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985). And the fact that the importation, had the matter proceeded, was to be accomplished by a government agent provides Palella no succor. *United States v. Giry,* 818 F.2d 120 (1st Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 162, 98 L.Ed.2d 116 (1987); *United States v. Schmucker–Bula,* 609 F.2d 399 (7th Cir.1980); *United States v. Seelig,* 498 F.2d 109, 113 (5th Cir.1974) ("The fact that a government informant was to effect the actual distribution of the drug does not extirpate their liability for conspiring to violate the law.").

### B. Chain of custody

■ Palella contends that the district court erred in admitting the heroin sample into evidence, arguing that the chain of custody from arrest and seizure to trial was not kept inviolate. Albeit not perfect, the chain of custody as demonstrated by the evidence is sufficient to support the trial judge's exercise of discretion in permitting that evidence to be presented to the jury.

We find no fatal gap in the custodial chain. DEA agent Sam Meale received the two packets of heroin from Giovanni Palella in the hotel in Milan; Meale made an immediate field test which was positive for heroin. He so testified without objection. An arrest and seizure immediately followed and the heroin passed into the possession of Officer Giorgio Zarantonello of the Milan police, who promptly delivered it to

Officer Rocco Chirico, custodian of evidence.

Officer Chirico testified that he put the heroin in the police evidence vault, to which he held the only key. The following day he took the heroin to a lab where it weighed in at 977 grams. He then resealed the heroin in an evidence bag and delivered the bag to the Office of Evidence of the Italian Tribunal. Officer Chirico, corroborated by Officer Vincenzo Pecoraro, testified that this procedure was the standard practice for securing evidence pending trial.

On January 21, 1987, Officers Zarantonello and Achille Serra, accompanied by an Italian judge, unsealed the evidence bag and took a sample from each of the two packages. Zarantonello identified the two packages as the same packages he had seized from Giovanni Palella the prior November 6. Serra maintained personal possession of the samples until he delivered them to Joe Marchan, a chemist employed by the Texas Department of Public Safety. Marchan tested the samples and found that they contained 32% pure heroin. He resealed the samples and kept them in his custody, following usual procedures, until the time of trial.

Palella focuses his challenge on the period from November 7, 1986 to January 21, 1987, when the heroin was in the Office of Evidence. He maintains that the evidence does not contain sufficient specific details proving the untainted custody of the heroin during that period. While we agree that the evidence of the custodial chain is less than optimal, we are not persuaded that the evidence was thus rendered so untrustworthy as to be inadmissible.

The decision to admit the heroin samples is reviewed under the abuse of discretion standard. *United States v. Jardina,* 747 F.2d 945 (5th Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 833 (1985); *United States v. Howard–Arias,* 679 F.2d 363 (4th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136 (1982). In the instant case, the government made a *prima facie* showing of authenticity. "Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document is authentic (citations omitted)." *Jardina,* 747 F.2d at 951, *quoting United States v. Goichman,* 547 F.2d 778, 784 (3d Cir.1976). We find sufficient evidence from which the jury could infer that the heroin samples were authentic. The field test of the purchased product was positive for heroin. Officer Zarantonello, who initially seized the heroin, testified that the test samples were taken from the seized packages. Officer Serra corroborated this testimony. Officers Chirico and Pecoraro testified that the standard practices for safeguarding evidence pending trial were observed. This testimony, combined with the testimony regarding the custody and handling of the heroin before and after storage at the Office of Evidence of the Italian Tribunal, suffices to support a finding that the heroin samples were what they purported to be. Fed.R.Evid. 901; *Jardina; United States v. Clark,* 732 F.2d 1536 (11th Cir. 1984). We perceive no abuse of discretion in the decision to allow the filing of the heroin samples in evidence.

## C. Sufficiency of the evidence

In assessing a challenge to the sufficiency of the evidence, we "view the evidence ... in the light most favorable to the jury verdict, and then determine whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Basey,* 816 F.2d 980, 1001 (5th Cir.1987). *See also, United States v. Santisteban,* 833 F.2d 513 (5th Cir.1987). Measuring the evidence against that standard, we have little difficulty concluding that the jury could find Palella guilty.

■ To establish guilt of a conspiracy the government must prove the existence of an agreement to do an unlawful act and the defendant's knowledge and voluntary participation in the conspiracy. *United States v. Gardea Carrasco,* 830 F.2d 41 (5th Cir.1987). Palella contends that the

prosecution failed to establish his participation in an agreement involving importation and distribution in the United States. We are not persuaded.

Palella was well aware of the announced plans of Uzzel's principal. Not only did Uzzel and the agents so testify, Palella conceded such. The recorded telephone conversations reflect that Palella was aware of and was intimately involved in the heroin negotiations, including price, quantity, availability, and purity. He was the intermediary between Uzzel and the Italian suppliers. He expressed the hope that the initial transaction would be the beginning of a long and fruitful illicit relationship. At one critical juncture, he assured Uzzel of the reliability of his family, giving his "guarantee" of faithful performance of their promise to deliver high quality heroin. The evidence suffices to support the verdicts on the conspiracy counts.

The same applies to the possession-with-intent and distribution counts. The court properly charged the jury on constructive possession, *United States v. Williams–Hendricks*, 805 F.2d 496 (5th Cir.1986); *United States v. Glasgow*, 658 F.2d 1036 (5th Cir.1981), and on aiding and abetting under 18 U.S.C. § 2, *United States v. Walker*, 621 F.2d 163 (5th Cir.1980), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981). Palella obviously aided and abetted his brothers in the Milan delivery program. He had the intent to commit the offense and performed one or more acts which contributed to the commission of the offense. *United States v. Smith*, 546 F.2d 1275 (5th Cir.1977). *See also, United States v. Longoria*, 569 F.2d 422 (5th Cir.1978); *United States v. Martinez*, 555 F.2d 1269 (5th Cir.1977). "To aid and abet, the defendant must wilfully associate himself in some way with the criminal venture and wilfully participate in it as he would in something he wished to bring about." *United States v. Aguirre Aguirre*, 716 F.2d 293, 298 (5th Cir.1983).

On the evidence presented, the jury was entitled to find that Palella exercised dominion and control over the heroin, *United States v. Vergara*, 687 F.2d 57 (5th Cir.

1982), and that he aided and abetted both the possession with intent to distribute and distribution in Milan with intent or knowledge of the importation into the United States.

### D. Double jeopardy

■ Palella next contends that his conviction and sentence for both possession with intent to distribute and distribution with knowledge of or intent to import violated the double jeopardy clause of the fifth amendment. We need not here long tarry.

As we observed in *United States v. Forester*, 836 F.2d 856, 859 (5th Cir.1988), "It cannot be gainsaid that different crimes may be committed during the course of one incident or transaction." Under the test enunciated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), double jeopardy is not implicated if each offense at issue involves proof of at least one element not required of the other. *United States v. Hernandez*, 591 F.2d 1019 (5th Cir.1979) (en banc).

The two statutes have distinctive elements. Moreover, independent evidence demonstrated that Palella and his brothers possessed the heroin with the intent to distribute for some time prior to actual distribution. *Illinois v. Vitale*, 447 U.S. 410, 420–21, 100 S.Ct. 2260, 2267, 65 L.Ed. 2d 228, 238 (1980). In one telephone conversation Palella spoke with a measure of exasperation of the duration of the possession of the heroin, saying: "Yes! Yes! I have, its three months I speak. I have, I have, I have." And the heroin was in fact distributed with intent and knowledge of the planned importation. Thus, separate proof was offered to support Palella's conviction of offenses with different elements. The double jeopardy clause has no application. *Vitale; Blockburger.*

### E. Errors in sentencing

■ Finally, Palella contends that the trial court erred by sentencing him under inapplicable statutory provisions. The sentencing order reflects convictions of: (1) conspiracy to import a quantity of heroin in

excess of 100 grams; (2) conspiracy to possess a quantity of heroin in excess of 100 grams with intent to distribute; (3) possession of "approximately 1,000 grams of heroin" with intent to distribute; and (4) distribution of "approximately 1,000 grams of heroin, knowing such heroin would be imported into the United States." The sentencing order makes specific reference to 21 U.S.C. § 960(b)(1) in the conspiracy-to-import charge, and to 21 U.S.C. § 841(b)(1)(A) in the conspiracy-to-possess and possession-with-intent charges. As Palella correctly notes, these statutory provisions apply only if the offense involves a quantity of one kilogram or more of heroin-containing substance. These statutes provide for a minimum sentence of imprisonment for ten years.

The evidence is uncontroverted; the quantity involved is 977 grams. The government submits that the statutory citations and references to "approximately 1,000 grams" were mere clerical errors which should be overlooked. We cannot agree.

Viewing the sentencing order as a whole, it is apparent that Palella was sentenced as if he were guilty of offenses involving a kilogram or more of a heroin-containing substance. The quantity involved did not reach that threshold. The quantity of the controlled substance is critical in the statutory sentencing scheme adopted by Congress. *See generally, United States v. McHugh,* 769 F.2d 860 (1st Cir.1985). The reference to "1,000 grams" and the statutory citations may have been mere inadvertences, playing no part in the court's ultimate sentence. On that we can only speculate, an exercise we purposely forego. This matter is better remanded to the trial court for resentencing consistent with the evidence and under the appropriate statutes. *United States v. Hutchins,* 818 F.2d 322 (5th Cir.1987), *cert. denied,* ——— U.S. ———, 108 S.Ct. 772, 98 L.Ed.2d 859 (1988).

The convictions are AFFIRMED; the sentences are VACATED, and the matter is REMANDED for resentencing.