921 F.2d 277
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Curtis Lee THOMAS, Defendant-Appellant.
 No. 90-3289.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1990.
 
 Before KEITH, KENNEDY and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant appeals his conviction for conspiracy to distribute cocaine within 1,000 feet of two public elementary schools in violation of 21 U.S.C. Secs. 845a and 846, distribution of cocaine at such location on October 3, 1988 in violation of 21 U.S.C. Secs. 845a and 841(a)(1) and 18 U.S.C. Sec. 2, and possession of cocaine with intent to distribute on October 4, 1988 in violation of 21 U.S.C. Sec. 841(a)(1). For the reasons that follow, we AFFIRM.
 
 I.
 
 2
 On October 3, 1988, Eunice Shanks, an undercover informant, purchased crack cocaine from defendant through the kitchen door of a house located within 1,000 feet from two elementary schools. Ms. Shanks thereafter reported the purchase to Officer Malloy of the Columbus Narcotics Squad who used the information to swear out an affidavit for a search warrant.
 
 
 3
 On October 4, 1988, a police team raided the house and confiscated crack cocaine and over $2,000 in cash. Defendant was present in the house at the time of the raid. In late October 1988, Ms. Shanks reviewed photographs of individuals who were present in the crack house and identified defendant as the person who had sold crack cocaine to her on October 3, 1988. On April 11, 1989, defendant signed a waiver of rights admitting that he had been selling crack cocaine out of the house for two months prior to the time of his arrest. Defendant was convicted in August 1989 following a jury trial. At trial, Ms. Shanks testified regarding her purchase of crack cocaine from defendant, and Officer Bisutti testified that two elementary schools were within 907 and 983 feet, respectively, from the house. In addition, co-defendant Floyd Simms testified that he and defendant had worked as sellers of crack cocaine at the house by taking money at the door from purchasers. Simms further testified that he believed defendant was working at the crack house to pay off a debt. On September 19, 1990, the district court denied defendant's motion for a judgment of acquittal, and on February 26, 1990 denied defendant's motion for a new trial.
 
 II.
 
 4
 Defendant assigns numerous errors on appeal related to the sufficiency of the evidence to support his conviction on the various charges. We address each error individually, finding that each is without merit.
 
 
 5
 A. Penalty Enhancement for Distribution Near Schools
 
 
 6
 Defendant argues that the evidence was insufficient to support a penalty enhancement for distributing a controlled substance within 1,000 feet of two elementary schools in violation of 21 U.S.C. Secs. 845a[1] because "the device used to make the measurement failed to establish the distance between the residence and the school with anything approximating scientific or legal certainty." Defendant maintains that the device was an inherently inaccurate means of measurement because the wheel was made of rubber and could conceivably wear out over time; a difference in measurement might have obtained if the officer had held the device in front of him rather than to his side; and the officer had no special training to operate the device. Defendant also maintains that the evidence was insufficient to support the penalty enhancement because the government failed to present evidence concerning the legal boundaries of either the house or the schools, or evidence that the officer used the most direct route between the boundaries as opposed to using a street route that a pedestrian would normally take.
 
 
 7
 We are not persuaded by defendant's arguments. In United States v. Panton, 846 F.2d 1335, 1337 (11th Cir.1988), the Eleventh Circuit summarily dismissed a similar argument that there was insufficient evidence that a drug transaction had occurred within 1,000 feet of an elementary school, stating: "The Government produced testimony concerning a paced measuring of the distance, which defendant failed to rebut with any contrary measurement or even a well-founded estimate. The evidence was clearly sufficient to establish this fact beyond a reasonable doubt." Likewise, in this case, the record reflects that the government presented testimony regarding the distance from the house to the elementary schools which the defendant failed to rebut by any contrary estimates. Given the purely speculative nature of defendant's objections, we similarly find that the evidence was sufficient to support the penalty enhancement.
 
 B. Credibility/Competency of Informant
 
 8
 Defendant next argues that the verdict was contrary to the great weight of the evidence because "it is extremely probable that [Ms. Shanks] was abusing Fiorinal No. 3 and beginning her admitted cocaine addiction," when she identified him through photographs in late October 1988. It it not entirely clear whether defendant is raising a credibility or a competency objection. To the extent that defendant poses an objection to the jury's assessment of Ms. Shanks' credibility, his assignment of error runs afoul of the rule that credibility determinations are ordinarily left to the trier of fact. "Because a witness's mental state during the period about which he proposes to testify is a matter which affects his credibility, it is a jury determination and thus not germane to competency to testify." United States v. Martino, 648 F.2d 367, 384 (5th Cir.1981), cert. denied, 456 U.S. 949 (1982).
 
 
 9
 To the extent that defendant is objecting to the district court's competency determination, his assignment of error also fails. In United States v. Ramirez, 871 F.2d 582 (6th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 127 (1989), we held that a witness who had used cocaine during the time period charged in the indictment, and the anti-anxiety drug Xanax at the time of trial, was competent to testify as a witness at trial, explaining:
 
 
 10
 We find nothing in the record to suggest that she was otherwise impaired to the point that her testimony should have been excluded. She was not under the influence of cocaine, she recently testified credibly in two previous trials, and her testimony in this trial was very lucid. Although the defense psychiatric witness in her offer of proof indicated that Xanax might make a person placid to the point where cross-examination might be less effective, this was general testimony and highly speculative.
 
 
 11
 871 F.2d at 584. In this case, defendant has not alleged that Ms. Shanks was under the influence of cocaine or any other drug at the time of trial, and a review of the trial transcript indicates that her testimony was lucid and responsive. Therefore, even accepting as true defendant's contention that Ms. Shanks began her cocaine addition in late October rather than November, we conclude that the district court did not abuse its discretion in allowing her to testify.
 
 C. Alleged Invalidity of Search Warrant
 
 12
 On August 18, 1989, the district court denied a motion to suppress evidence obtained under the search warrant on the ground that the motion was untimely filed. Defendant's third argument is that the district court abused its discretion in failing to find good cause for relief from the waiver[2] in that counsel was not appointed until after the deadline for filing pre-trial motions had expired. On the merits, defendant contends the search warrant was invalid because it was supported by an affidavit which contained incorrect information. The affidavit prepared by Officer Malloy stated that "the informant knows what cocaine looks like and how it is packaged and has used cocaine in the past." However, Ms. Shanks testified at trial that she had never used cocaine prior to November 1988 when she became addicted to it.
 
 
 13
 We find it unnecessary to address defendant's argument that the district court erred in refusing to grant relief from the waiver because it is clear that the mistake contained in the affidavit did not invalidate the search warrant. Defendant has not alleged that Officer Malloy included the false statement in his affidavit "knowingly and intentionally, or with reckless disregard for the truth." See Franks v. Delaware, 438 U.S. 154, 156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). To the contrary, the evidence indicates that Officer Malloy reasonably believed the informant had used cocaine prior to October 3, 1988, the date of the affidavit, because he had utilized her services since January 1988. Furthermore, the informant testified at trial that she had seen both ordinary and crack cocaine, had watched people use cocaine, had bought crack in January 1988, and knew how cocaine and crack cocaine were packaged by drug dealers. "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Franks, 438 U.S. at 172.
 
 D. Adequacy of Chain of Custody Evidence
 
 14
 Defendant's fourth argument is that the district court abused its discretion in admitting two cocaine samples into evidence (exhibits 1 and 9) because the government failed to introduce sufficient chain of custody evidence. The record reveals that the chain of custody evidence introduced at trial, although imperfect, was sufficient to support the conviction. Officer Malloy testified that he received the seized cocaine from the confidential informant, placed it in two brown Columbus Police Department Property envelopes, addressed it, and took it to the Police Property Room. Two report forms accompanying the cocaine indicated the quantity of drugs, and described from whom and from where they were seized. The cocaine was then sent to the Drug Enforcement Administration (DEA) in Chicago for testing, but no evidence was presented at trial as to who sent it. The report forms indicated that the cocaine was recieved from Officer Malloy by an FBI agent. The cocaine exhibits were then passed along to Debra Edick, the DEA Forensic Chemist who conducted the analysis. Edick testified that she did not receive the cocaine directly from the agent. However, Edick testified that when she received the exhibits they were intact in seal proof bags. Edick further testifed that Officer Malloy's initials were on exhibit 1. Sergeant Manley testified that exhibit 9 appeared to be of the same color, size, texture and weight as the crack cocaine which was seized. Officer Malloy identified both exhibits as those which he had addressed to have sent to the DEA.
 
 
 15
 The decision to admit drug samples into evidence is reviewed under an abuse of discretion standard. United States v. Palella, 846 F.2d 977, 981 (5th Cir.), cert. denied, 488 U.S. 863. "Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document is authentic." United States v. Jardina, 747 F.2d 945, 951 (5th Cir.1984), cert. denied, 470 U.S. 1058 (1985) (citations omitted). In this case, there was a gap in the chain of custody evidence involving transmission of the cocaine from the FBI agent to Edick, the DEA Forensic Chemist. Nonetheless, the drug reports and the testimony of Edick, Malloy and Manley provided sufficient evidence from which the jury could infer that the cocaine exhibits were authentic. While recognizing that evidence of the custodial chain was less than optimal, "we are not persuaded that the evidence was thus rendered so untrustworthy as to be inadmissible." Palella, 846 F.2d at 981.
 
 
 16
 E. Alleged Impropriety of Trial Judge's Commentary
 
 
 17
 Defendant's fifth argument is that the district court abused its discretion in failing to grant his motion for a new trial based upon the fact that the judge made several comments concerning the testimony of a government witness which allegedly indicated partiality towards the government. The first episode occurred after defense counsel pointed out the inconsistency between Officer Malloy's testimony before the grand jury that there had been two purchases of cocaine, and his testimony at trial that there had been a single purchase. The prosecutor, in the course of attempting to rehabilitate the witness, asked whether the officer had given "false testimony" to a grand jury. The judge interjected by asking "Do you mean false or incorrect testimony?" and the prosecutor replied that he meant "incorrect testimony." The judge then stated: "The Court feels based upon this witness's testimony it is incorrect rather than false, because it was an inadvertence. It was a mistake. It was a misapprehension." The second episode during cross-examination of the same witness when defense counsel used the word "recant" in reference to the Officer Malloy's grand jury testimony and the trial judge remarked that the term had an "odious connotation."
 
 
 18
 Based on our review of the record, we conclude that the trial judge's commentary on the prosecutor's and defense counsel's choices of words did not convey a climate of partiality or unfairness sufficient to warrant a new trial. When an objection is premised on the allegedly improper remarks of the trial judge, an "extremely high level of interference [is] necessary to justify a new trial." United States v. DeLuca, 692 F.2d 1277, 1282 (9th Cir.1982). In United States v. Price, 623 F.2d 587, 593 (9th Cir.), cert. denied, 449 U.S. 1016 (1980), the Ninth Circuit held that two comments by the trial judge which arguably indicated a bias for the prosecution did not entitle the defendant to a new trial, explaining: "While we do not approve of the trial court's interventions in the instant case, a careful examination of the comments discloses no prejudice to the defendant. In light of the strong evidence of Mr. Price's guilt and two cautionary instructions given by the trial court, we find no reversible error." Likewise, in this case the evidence of guilt was strong and the trial judge provided a cautionary instruction concerning his comments. Accordingly, we find no reversible error.
 
 F. Reliance on Co-Defendant's Testimony
 
 19
 Lastly, defendant argues that the district court abused its discretion in failing to grant a new trial based on the fact that co-defendant Floyd Simms recanted certain portions of his trial testimony at a subsequent evidentiary hearing held on defendant's new trial motion. At trial, Simms testified that he believed defendant was working at the crack house in order to pay off a debt. At the subsequent evidentiary hearing, Simms testified that his earlier testimony regarding defendant's motive for working at the crack house (that defendant was working to pay off a debt) was false. Nonetheless, Simms affirmed his earlier testimony that he and defendant had worked a noon to midnight shift at the crack house during October 1988; that defendant had worked the door of the house on October 3, 1988; and that he and defendant had been working inside the house on October 4, 1988, the day of the raid.
 
 
 20
 In Gordon v. United States, 178 F.2d 896, 900 (6th Cir.1949), cert. denied, 339 U.S. 935 (1950), we set forth the standards for granting a new trial on the basis of perjured testimony:
 
 
 21
 The rule to be applied in such cases is outlined in Larrison v. United States, 7 Cir., 24 F.2d 82: A new trial should be granted where the court is reasonably well satisfied that the testimony given by the material witness is false; that, without it, the jury might have reached a different conclusion; that the party seeking the new trial was taken by surprise and was unable to meet such testimony or did not know of its falsity until after the trial."
 
 
 22
 In the present case, defendant's motive for selling crack was collateral to the central issue of whether he, in fact, had been involved in the distribution process. Given that Simms only recanted a small and relatively inconsequential part of his testimony, the district court did not abuse its discretion in concluding that the jury would not have reached a different conclusion absent the perjured testimony.
 
 III.
 
 23
 In summary, none of defendant's objections are meritorious. Accordingly, defendant's conviction is AFFIRMED.
 
 
 
 [1]
 21 U.S.C. Sec. 845(a) provides in part:
 Any person who violates section 841(a)(1) or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary ... school ... is (except as provided in subsection (b) of this section) punishable (1) by a term of imprisonment, or fine, or both up to twice that authorized by section 841(b) of this title; and (2) at least twice any term of supervised released authorized by section 841(b) of this title for a first offense.
 
 
 [2]
 Fed.R.Crim.P. 12(f) provides:
 Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.