968 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael KINNARD (91-6221), Andrew L. Hall, Jr. (91-6263),
Defendants-Appellants.
 Nos. 91-6221, 91-6263.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1992.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Andrew Hall and Michael Kinnard each appeal their convictions for violations of federal narcotics laws. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 In March 1990, Ronald Walker, who was an employee of the United States Postal Service, volunteered to work undercover for the Postal Inspection Service. Walker began to purchase cocaine and marijuana from Martin Brumbach. Brumbach eventually introduced Walker to another postal employee who was Brumbach's source: Andrew Hall. Thereafter, on numerous occasions, Walker purchased cocaine and marijuana from Hall or from other individuals who were associated with Hall. The postal inspectors made audio or video recordings of many of these purchases.
 
 
 3
 During the investigation, Walker encountered a number of individuals who were associated with Hall. One of these individuals was co-defendant Michael Kinnard. Early in the investigation, Hall told Walker that Walker could obtain drugs from several people who worked for the Postal Service. For example, Hall gave Walker a physical description of a post office mail handler who took care of Hall's drug business on the weekends. Walker later stated that even though he did not know Kinnard by name at the time, he knew that Hall was referring to the individual now known as Kinnard. Later in the investigation, Hall invited Walker to a party at which Hall was selling drugs. While there, Walker saw the person that he believed Hall had previously described to him--it was Kinnard. Hall introduced Kinnard as his bodyguard "Mike".
 
 
 4
 Subsequently, Hall and Walker met on several occasions to transact drug deals. On August 10, 1990, Walker and Hall met in Walker's car to conduct a drug transaction. During the meeting, Hall received a phone call on his portable telephone from someone he called "Mike," and Hall gave "Mike" instructions for an upcoming drug deal. At the same time that Hall was talking to "Mike," postal inspectors discovered that Kinnard's car was parked at Hall's residence, which was located quite a distance from the drug transaction between Walker and Hall. Moreover, Postal Service employment records revealed that on the date of the phone conversation between Hall and "Mike," Kinnard was on sick leave. In March 1991, Hall informed Walker that he and Kinnard had experienced a "falling out" over a drug deal that had gone bad and cost Hall money.
 
 
 5
 On March 13, 1991, a grand jury issued a 22-count indictment against various defendants. In the indictment, the grand jury charged Kinnard with conspiracy to distribute 500 grams or more of cocaine or marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The grand jury charged Hall with one count of conspiracy to distribute 500 grams or more of cocaine or marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846; nine counts of distributing or possessing with intent to distribute a controlled substance within 1,000 feet of a public or private elementary, vocational, or secondary school, in violation of 21 U.S.C. §§ 841(a)(1) and 845a;* one count of distributing or possessing with intent to distribute a controlled substance within 100 feet of a video arcade facility, in violation of 21 U.S.C. §§ 841(a)(1) and 845a; and 11 counts of distributing or possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).
 
 
 6
 The grand jury process, however, was not completed. On April 11, 1991, the grand jury issued a superseding indictment that added Curtis Smith as a defendant. On May 3, Hall's attorney advised an assistant United States Attorney that Hall would plead not guilty to the charges. In turn, the government's attorney advised Hall's attorney that the postal inspectors had been requesting a second superseding indictment that would contain a continuing criminal enterprise charge. On May 7, the government's attorney again mentioned the possibility of charging Hall with operating a continuing criminal enterprise, and on that same day the government's attorney also wrote a letter to Hall's attorney. The letter gave Hall three options:
 
 
 7
 (1) Hall could proceed to trial and the trial could be based on a second superseding indictment containing an additional count--operating a continuing criminal enterprise;
 
 
 8
 (2) Hall could plead guilty to the conspiracy count and to one substantive count of the indictment; or
 
 
 9
 (3) Hall could provide assistance that could lead to a lower sentence.
 
 
 10
 Hall reiterated that he would plead not guilty to all of the charges. Several days after Hall informed the government of his decision, the grand jury issued a second superseding indictment that added an additional count charging Hall with operating a continuing criminal enterprise.
 
 
 11
 On May 31, Hall moved to dismiss the second superseding indictment alleging that the second superseding indictment was the result of vindictive prosecution. The district court denied Hall's motion to dismiss the indictment, and the jury convicted Hall and Kinnard as they were charged in the second superseding indictment. The district court sentenced Hall to 20 years in prison and sentenced Kinnard to 6.5 years in prison.
 
 Hall's Appeal
 
 12
 On appeal, Hall asserts that the second superseding indictment resulted from vindictive prosecution because the grand jury returned the indictment only after Hall had refused to plead guilty to certain charges contained in the first two indictments. In analyzing Hall's vindictive prosecution claim, we receive guidance from the Supreme Court's decision in Bordenkircher v. Hayes, 434 U.S. 357 (1978). In Bordenkircher, a grand jury indicted the defendant for uttering a forged instrument. The prosecutor informed the defendant that he would recommend a sentence of five years in prison if the defendant would plead guilty to the indictment. The prosecutor also informed the defendant that if he did not plead guilty and "save the court the inconvenience and necessity of a trial," the prosecutor would return to the grand jury and seek an indictment that would charge the defendant with an additional and more serious offense--being a habitual offender. Id. at 358-59. The defendant refused to plead guilty to the indictment, and the prosecutor, true to his word, obtained a second indictment containing an habitual offender count. Subsequently, a jury found the defendant guilty of uttering a forged instrument and of being a habitual offender. Id. at 359.
 
 
 13
 Before the Supreme Court, Hayes argued that the prosecutor violated due process by seeking a more serious charge against him simply because Hayes had refused to plead guilty to the initial charge. Id. at 358. The Supreme Court rejected his argument and held that the prosecutor had simply presented the defendant with the unpleasant alternative of foregoing trial or facing more charges on which he was plainly subject to prosecution. Id. at 365. The Court stated that in the "give and take" of plea bargaining there is no element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer. Id. at 363. See United States v. Goodwin, 457 U.S. 368, 382-83 (1982) (simply because a defendant refuses to plead guilty and the government subsequently changes its charging decision does not warrant a presumption that the subsequent charges were the result of vindictive prosecution). The facts of this case parallel the facts of both Bordenkircher and Goodwin. A straight-forward application of rules announced by the Supreme Court in Bordenkircher and Goodwin leads us to the conclusion that no vindictive prosecution exists in this case.
 
 
 14
 Next, Hall argues that the government did not establish a sufficient chain of custody for the drugs that the court admitted into evidence. Hall does not challenge the government's proof on the chain of custody after the postal inspectors received the drugs. Hall asserts, however, that because the undercover informant was unable to recognize the individual drug exhibits at trial, the government failed to establish a sufficient link between Walker and the government.
 
 
 15
 We review the trial court's decision to admit drug samples under the abuse of discretion standard. United States v. Palella, 846 F.2d 977, 981 (5th Cir.), cert. denied, 488 U.S. 863 (1988). See United States v. Levy, 904 F.2d 1026, 1029 (6th Cir.1990) (analyzing allegations of erroneous evidentiary rulings under the abuse of discretion standard), cert. denied sub nom. Black v. United States, 111 S.Ct. 974 (1991). Further, the government need not prove a perfect chain of custody. Gaps in the chain of custody affect the weight of the evidence not the admissibility of the evidence. United States v. Cardenas, 864 F.2d 1528, 1531 (10th Cir.), cert. denied 491 U.S. 909 (1989). See Levy, 904 F.2d 1030 (absent a clear showing of abuse of discretion, challenges to the chain of custody go to the weight of the evidence, not its admissibility). In this case, the district court did not abuse its discretion by allowing the drug samples into evidence. Although the chain of custody for the drug samples was not perfect, the testimony from John Discoll, the postal inspector in charge of the investigation, and from Walker is sufficient to support the district court's decision allowing the government to use the drug exhibits.
 
 
 16
 Finally, Hall contends that the district court deprived him of his rights under the Confrontation Clause by refusing to allow him to use an audio recording to impeach Walker during cross-examination. The district court prevented Hall's attorney from using the 40-minute tape because it concluded the tape would address issues that were collateral to the issues at trial and would be an undue waste of the court's time. On review, we hold that the district court did not commit error in refusing to allow Hall to play the audio recording. The evidence that Hall wanted to introduce on the tape was related to a collateral matter, was of dubious relevancy to the case, see Fed.R.Evid. 401 (defining "relevant evidence"), and would have simply wasted judicial resources. Therefore, the district court did not err in limiting Hall's attempted cross-examination. As the Supreme Court stated in Delaware v. Fensterer, 474 U.S. 15, 20 (1985), "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (emphasis in original).
 
 Kinnard's Appeal
 
 17
 Kinnard first asserts that the evidence is insufficient to support his conspiracy conviction. In determining whether there is sufficient evidence to support a conviction, this court must view the evidence in a light most favorable to the government and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Sanchez, 928 F.2d 1450, 1457 (6th Cir.1991) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Circumstantial evidence alone is sufficient to support a conviction, and to do so, the circumstantial evidence need not remove every reasonable hypothesis except that of guilt. United States v. Stone, 748 F.2d 361, 362 (6th Cir.1984). An appellate court should reverse a conviction for insufficient evidence only "if th[e] judgment is not supported by substantial and competent evidence upon the record as a whole, and ... this rule applies whether the evidence is direct or wholly circumstantial." United States v. Ellzey, 874 F.2d 324, 329 (6th Cir.1989) (quoting Stone, 748 F.2d at 363).
 
 
 18
 In this case, sufficient evidence exists to support Kinnard's conviction. To prove that Kinnard was a member of a drug conspiracy, the government must prove that (1) a drug conspiracy existed; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily joined the conspiracy. United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986). Once the government establishes a conspiracy, only slight evidence is needed to implicate a defendant. United States v. Poulous, 895 F.2d 1113, 1117 (6th Cir.1990). Here, the government's evidence clearly demonstrated a conspiracy involving cocaine and marijuana. The circumstantial evidence also demonstrated that Kinnard knew of the conspiracy. Finally, several pieces of evidence connected Kinnard to the conspiracy. Taking all of the evidence in a light most favorable to the government, a rational trier of fact could have found beyond a reasonable doubt that Kinnard had participated in a drug conspiracy.
 
 
 19
 Kinnard also asserts that the proof produced by the government at trial demonstrated the existence of more than one conspiracy. Kinnard argues, in effect, that a fatal variance exists between the indictment charge and the government's evidence. The indictment charges a single conspiracy spanning over two years; however, Kinnard asserts that the government's evidence established a "wheel" conspiracy--with Hall serving as the "hub" and other individuals serving as the "spokes"--but the evidence did not connect the spokes to the hub in such a way so as to prove the existence of a single conspiracy.
 
 
 20
 Where the indictment alleges a single conspiracy, but the evidence can be reasonably construed as only supporting multiple conspiracies, the resulting variance between the indictment and the proof is reversible error if the defendant can show that he was prejudiced by the variance. United States v. Warner, 690 F.2d 545, 548 (6th Cir.1982). On appeal, this court must view the evidence regarding the variance in a light most favorable to the government. United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied sub nom. Freeman v. United States, 469 U.S. 1193 (1985). In this case, we find that the government's proof at trial supported a finding of a single conspiracy. Of course there were several members of the conspiracy and every member of the conspiracy was not present at every transaction. The evidence, however, demonstrated that each member of the conspiracy was engaged in a collective venture to distribute marijuana and cocaine to the public. Additionally, simply because the government's proof does not connect Kinnard to the earliest transactions of the conspiracy does not preclude a finding that he was part of a single conspiracy spanning over approximately two years. Because the evidence in this case cannot be reasonably construed as only supporting multiple conspiracies, there is no variance between the indictment's charge and the government's proof. Hence, there is no reversible error.
 
 
 21
 For the foregoing reasons, we affirm the district court's judgment.
 
 
 
 *
 Congress has moved the provisions formerly contained under 21 U.S.C. § 845a and placed them under 21 U.S.C. § 860